Joe PALUSO and Nick S. Kalekas,
Plaintiffs-Appellees,

v.

F. David MATHEWS, Secretary of
Health, Education and Welfare,
Defendant-Appellant.

Nos. 76–1464, 76–1766.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 4, 1977.

Decided March 7, 1978.

Rex E. Lee, Asst. Atty. Gen., Ramon M. Child, U. S. Atty., Salt Lake City, Utah, William Kanter and Mark H. Gallant, Appellate Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., on the brief, for defendant-appellant.

E. Gail Falk, Charleston, W. Va., on the brief for amicus curiae, United Mine Workers of America.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

## OPINION ON REHEARING

BARRETT, Circuit Judge.

In these consolidated cases, the Secretary of Health, Education and Welfare (HEW) appeals from orders relating to the claims of two coal miners for disability benefits filed by reason of their alleged condition of pneumoconiosis (black lung). The claims were filed pursuant to Title IV, Federal Coal Mine and Safety Act of 1969, as amended 1972, 30 U.S.C. § 901, et seq. (the Act). Both claimants filed for benefits prior to June 30, 1973, but neither was adjudged disabled until after that date.

The issue presented is whether HEW has jurisdiction to grant lifetime federal benefits, as provided for in Part B of the Act, 30 U.S.C. §§ 921–925, to claimants who were not shown to be totally disabled due to black lung disease as of June 30, 1973, but who did present evidence of such disability after that date.

Even though the two cases are consolidated, each must be reviewed separately because the facts and judicial determinations presented differ.

### Paluso

Joe Paluso, who worked as a coal miner for 22 years, filed his claim for benefits in 1971. Paluso last worked in the mines during the year 1957. His application was twice denied by the Bureau of Disability Insurance (BDI). Following a *de novo* hearing, an administrative law judge found that Paluso was totally disabled as of No-

Brigham E. Roberts of Rawlings, Roberts & Black and Robert J. Shaughnessy, Salt Lake City, Utah, on the brief, for plaintiffs-appellees.

vember 18, 1973. At that hearing the following medical evidence was considered: chest X-rays taken in 1971 and 1973, which were negative; pulmonary function tests, made in April, 1973, which though not definite, did indicate "an obstructive pulmonary disease of moderate severity," (Paluso R., Vol. I, 13); and a medical report dated May 18, 1973, which revealed that Paluso had suffered from shortness of breath and a cough productive of black phlegm. The conclusion reached in that report was that Paluso has "bad chronic pulmonary disease. This was one reason he had to leave the mines. He could never work in the mines at this time or in the last 5–7 years." (Paluso R., Vol. I, 20). Paluso and his wife testified about his work history, including the fact that he had been forced to quit a job driving a beer truck on November 18, 1973 because of his health.

The administrative law judge found that Paluso was totally disabled under a Social Security regulation defining disability in terms of a miner's inability to be comparably and gainfully employed as the result of pneumoconiosis:

> When a ventilatory study and/or physical performance test is medically contraindicated, or cannot be obtained or where evidence obtained as a result of such tests does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience prevents (or prevented) him from engaging in comparable and gainful work.

20 CFR 410.425(d).

The "other relevant evidence" used in making determination of disability can include:

> . . . medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence

submitted by the miner's physician, his spouse's affidavits.

20 CFR 410.414(c).

Based on Paluso's inability to work and other evidence, the administrative law judge found him eligible for benefits as of November 18, 1973. The council, on its own motion, reviewed the decision of the administrative law judge. It considered the evidence proffered at the *de novo* hearing, together with a medical report from a Veteran's Administration physician dated May 20, 1974. The doctor who made that report concluded that black lung disease was probably the source of Paluso's respiratory problems:

> In summary, we have a gentleman who has chronic lung disease who does not have the smoking history that usually goes along with this condition. Coal miners pneumoconiosis (Black Lung Disease) is certainly the most reasonable etiology for his condition.

[Paluso R., Vol. I, 108.]

Inasmuch as Paluso was unable to present solid evidence of disability as of June 30, 1973, the Council reversed the administrative law judge's decision. It rejected Paluso's claim. Paluso appealed that decision to the district court, which remanded to HEW with instructions that the Council review the administrative law judge's finding of total disability as of November 18, 1973. Implicit in the remand is the suggestion that the Council should have indicated the weight it had given to the May, 1974 medical report. We affirm the decision of the trial court.

### Kalekas

Nick Kalekas, who had worked for 12 years as a miner, filed for black lung benefits in 1972. He last worked in the mines during the year 1924. His claim was denied twice by BDI. At a *de novo* hearing before an administrative law judge held in 1974, Kalekas was adjudged disabled and eligible for benefits. No medical evidence was offered which would have aided in a determination of total disability due to pneumoconiosis; however, the administrative law

judge, at the close of the hearing, directed that Kalekas should undergo ventilatory and blood gas tests. The blood gas test, was made on October 10, 1974, revealing that Kalekas could be classified as suffering from black lung, in accordance with the standards set forth in 20 CFR 410.490, appendix to subpart D. The administrative law judge's decision regarding disability was based on the aforesaid regulation which provides:

Medical considerations alone shall justify a finding that a miner is (or was) totally disabled where his impairment is one that meets (or met) the duration requirement in 410.412(b)(2) and is listed in the appendix to this subpart or if his impairment is medically the equivalent of a listed impairment.

20 CFR 410.242(b).

The duration requirement is one that can be expected to last for a continuous period of at least a year or result in death. 20 CFR 410.412(b)(2).

The Council, in reviewing and reversing the administrative law judge's decision, considered the following medical evidence: chest X-rays taken in 1963 and 1967, which were negative; a chest X-ray taken in 1972, which was read by one doctor as being positive and as negative by two certified readers of miners' chest X-rays; ventilatory studies from 1972 and 1974, which showed no presence of black lung; and a 1974 blood gas test which had been ordered by the administrative law judge. The Council determined that the blood gas test did not indicate any disability as of June 30, 1973:

In the instant case, blood gas studies which show values below those specified in the Appendix were not made until more than a year after jurisdiction of the Social Security Administration expired and do not establish that the requirements for total disability due to pneumoconiosis, as set forth in either Section 410.490 or Section 410.426 of the Regulations were met at any time before July 1, 1973.

[Kalekas R., Vol. II, 7.]

Kalekas appealed the Council's decision. The trial court reversed the Council, finding that Kalekas was entitled to benefits, inasmuch as he had met one of the interim standards, which establishes disability:

Pneumoconiosis is a progressive disease. The last and latest blood gas studies indicated the presence of the disease. Since plaintiff filed his application for benefits prior to July 1, 1973, he is entitled to the interim presumption and requirements of Section 410.424 of Regulation No. 10. This section states in part that a miner who makes a timely filing "medical considerations alone" shall justify a finding that a miner is totally disabled where his impairment is one that meets the duration requirements which has lasted or can be expected to last for a continuous period of not less than 12 months and is listed in the appendix to subpart D of Regulations, No. 10.

[Kalekas R., Vol. III, 53–54.]

We must reverse the trial court's decision and remand to the Secretary of HEW for further proceedings.

On appeal, HEW argues that Paluso and Kalekas are not eligible for benefits under Part B of the Act, since their disabilities were not shown to have existed prior to June 30, 1973. Additionally, in *Paluso*, HEW contends that the decision is ripe for appeal, because the remand order is a final appealable order.

I.

We first must determine in *Paluso* whether the district court's remand to HEW is a final, appealable order. HEW contends that the order is final and appealable, whereas Paluso contends that this court lacks jurisdiction because the remand order to HEW is interlocutory rather than final.

Those orders deemed to be final are appealable under 28 U.S.C. § 1291. The determination of a final order is often a difficult, close question for which there is no readily available formula. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Courts have wrestled

with this knotty problem on numerous occasions and have employed various approaches.

It is true that in many instances remand to an administrative agency for further consideration has been held to be an interlocutory order and, thus, non-appealable. *Bohms v. Gardner*, 381 F.2d 283 (8th Cir. 1967), *cert. denied*, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); *Pauls v. Secretary of the Air Force*, 457 F.2d 294 (1st Cir. 1972). These decisions, however, concern rights affecting only individual litigants and not the potential rights of an unknown number of persons who are likely to be affected by a significant ruling, such as that involved here. In many cases, courts have classified traditional interlocutory orders as subject to review. *Cohen v. Perales*, 412 F.2d 44 (5th Cir. 1969), rev. on other grounds, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lopez v. Secretary of HEW*, 512 F.2d 1155 (1st Cir. 1975). There are occasions when the finality issue must be judged from a practical, rather than technical point of view. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Ringsby Truck Lines, Inc. v. U. S.*, 490 F.2d 620 (10th Cir. 1974).

In *Cohen v. Beneficial, supra*, the court stated that some orders should be treated as final even though they are not finally dispositive of the merits, providing they raise some issue of federalism so important that the order must be reviewed because of the serious and unsettled nature of the matter. *See, Bowe v. First of Denver Mortgage Investors*, 562 F.2d 640 (10th Cir. 1977); *Lee v. Western Wool Processors, Inc.*, 313 F.2d 13 (10th Cir. 1962).

■ Paluso presents an important issue of federalism in that it involves the interests of many potential claimants for black lung benefits. By balancing the inconvenience and costs that accompany piecemeal reviews, on the one hand, and the danger of denying justice by delay, on the other hand, we hold that the remand order is appealable. *See: Gillespie v. United States Steel*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

## II.

The issue common to both *Paluso* and *Kalekas*, as perceived by HEW, is:

Whether HEW has jurisdiction to grant black lung benefits to claimants who filed their administrative applications with HEW by June 30, 1973, but whose medical evidence purports to establish the existence of disability from the disease some time after June 30, 1973, the date on which authority to administer the Black Lung Act was transferred from the Secretary of HEW to the Secretary of Labor.

[HEW Brief, 2.]

The Secretary contends that neither Paluso nor Kalekas is eligible for benefits under Part B of the Act, for they had not filed before the appropriate date and were not shown to be disabled as of that date.

The Act manifested congressional recognition that a serious employment-related health problem existed in the coal industry and that then existing programs were not adequately compensating coal miners who had been stricken by black lung in the course of their employment. Under the terms of the Act, there is a sharing of responsibility in funding the compensation program between the government and the coal industry. Under Part B, 30 U.S.C. §§ 921–25, the government would pay benefits for life to disabled miners who filed claims prior to June 30, 1973. The program was to be administered by the Secretary of HEW who was given authority to promulgate appropriate regulations defining eligibility. The interim adjudicatory standards prepared by the Secretary made it easier to establish total disability than the standards applicable to claims filed after June 30, 1973. (Compare, 20 CFR 410.490 and 20 CFR 410.414–430). For any claims filed after December 31, 1973, the coal industry or state workmen's compensation programs are required to provide benefit payments. Under this phase, Part C of the Act, 30 U.S.C. §§ 931–940, the Secretary of Labor is to administer the program. Implicit in

the relationship of these two compensation programs is the proposition that the Federal Government could not realistically be expected to compensate all miners who might ever contract black lung disease. The intent of Congress was to provide benefits for coal miners who presently suffered from the disease; however, miners who contracted the disease in the future, i. e., after July, 1973, were to be compensated by state or industry programs. 1972 U.S.Code and Congressional and Administrative News, p. 2324. This sharing of financial responsibility between the federal government and the coal industry was described by Senators Taft and Javits as a situation wherein "the Federal Government would pick up the lifetime cost of the huge backlog of claims that had accumulated over decades, while the industry would pick up the burden of paying the claims of those still working." 1972 U.S.Code Congressional and Administrative News, p. 2336.

HEW contends that Paluso and Kalekas are not eligible for Part B benefits in that: (1) they had not properly filed their claims before June 30, 1973, and (2) they were not totally disabled as of that date.

Even though the proper filing of a claim is of great significance to claimants, nowhere in the Act is the word "file" defined. HEW argues that "to file" should be construed as meaning "to effectively file." According to a regulation promulgated by HEW, one has effectively filed only when he meets all the requirements for eligibility:

> If the claimant first meets the requirements for entitlement to benefits in a month after the month of actual filing but before a final administrative or judicial decision is rendered on his claim, his claim will be deemed to have been effectively filed in such first month of entitlements.
> 20 CFR 410.226.

In relying on this regulation, HEW argues that inasmuch as Paluso and Kalekas did not prove disability until after the cut-off date, they had not "filed" and were therefore not eligible for Part B benefits; fur-

ther, that they should not be entitled to prove disability by relying upon the more lenient interim adjudicatory standards of Part B.

We reject HEW's specialized definition of "file," relying on the well-known legal aphorism that words in a statute are to be given their ordinary, plain meaning unless there is a clear congressional intent to the contrary. *See, United States v. State of New Mexico,* 536 F.2d 1324 (10th Cir. 1976). "File" is generally defined as meaning to enter on official record or to apply for, (American Heritage Dictionary of the English Language, Houghton-Mifflin Co., 1976, p. 490.) or, more simply, "to submit papers." *Talley v. Mathews,* 550 F.2d 911 (4th Cir. 1977). We note that HEW does not recognize the specialized definition it here urges in the interpretation of some of its other regulations. *See,* e. g., 20 CFR 410.227, where a claim is considered to have been filed when it is received by the proper person in authority. We hold that inasmuch as Paluso and Kalekas submitted their claims prior to June 30, 1973, they are deemed to have "filed" for Part B benefits and are eligible to be judged under the interim standards found in 20 CFR 410.490, Appendix D.

### III.

HEW further contends that in order for a miner to be deemed eligible for Part B benefits he must show that he was totally disabled as of June 30, 1973. Several courts of appeal have held that in order for eligibility to attach, a claimant must have filed and must also establish his total disability as of June 30, 1973. *See, Padavich v. Mathews,* 561 F.2d 142 (8th Cir. 1977); *Humphreville v. Mathews,* 560 F.2d 347 (8th Cir. 1977); *Talley v. Mathews, supra; Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977); *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976). These decisions, to a large extent, are based on the rationale that Congress clearly intended to limit the time period for which it would be responsible for compensating diseased miners. The Act and accompanying legislative history explic-

itly state the view that the federal government would provide continuing benefits exclusively to miners who were adjudged to be totally disabled on or before June 30, 1973. We accept the view articulated by these circuits, i. e., that a miner must have been totally disabled as of June 30, 1973.

 Those courts, *supra,* have recognized that it is often difficult to prove that a miner is suffering from black lung disease. It is well-established medically that pneumoconiosis is a progressive disease which frequently defies diagnosis. (*See,* 1972 U.S.Code Congressional and Administrative News, pp. 2313–2320.) There is no single effective method that can be used in diagnosing its presence. Thus, it was recognized by Congress that negative chest X-rays are not always definitive proof of absence of the disease. 30 U.S.C. § 921(c)(4). Because of the progressive nature of the disease and the difficulty in making accurate diagnosis, many miners who were in fact disabled as a result of black lung disease were denied compensation. In recognition of this difficulty the circuit opinions heretofore cited have ameliorated the harsh position that total disability must be unqualifiedly shown to have existed as of June 30, 1973, by adopting the position that medical evidence obtained *after* that date can be used in determining eligibility dating back to June 30, 1973. Medical evidence obtained after the cut-off date is to be considered relevant in ascertaining when disability commenced. *Humphreville, supra,* at 350. Medical evidence obtained at any time is pertinent if it relates back to prove that black lung disease was present as of June 30, 1973. *Ingram, supra,* at 908. If it can be shown, through use of mathematical probabilities and relevant medical opinion, that the disease was present on June 30, 1973, then medical evidence obtained after that date will be accepted. *Begley, supra,* at 1354. Thus, throughout these opinions moves the underlying theme that a miner will be deemed eligible if it is *probable* that he was disabled as of June 30. This probability gives rise to a presumption which can be rebutted by HEW.

 We believe that the matter of "probability" should be further refined so as to encompass a presumption that a claimant who filed for benefits before the cut-off date is to be regarded as a "good faith" claimant and that if medical evidence acquired after June 30, 1973, can be construed to lead to a diagnosis that a miner *probably* was suffering from the disease on or before June 30, all reasonable doubts that he was so disabled are to be resolved in favor of the claimant. We are of the view that all reasonable inferences and presumptions should be construed in favor of a miner who when he filed his claim believed that he was suffering from black lung, even though he had not mustered sufficient evidence of his disability prior to the cut-off date. We anchor this approach to a variety of factors, including a claimant's ignorance or misunderstanding of eligibility standards, lack of adequate medical evidence due to the progressive nature of black lung disease, a miner's financial inability to seek proper medical confirmation, and inexact methods of diagnosis. It is a matter of overriding importance that the Act is remedial in nature and is to be given liberal construction. *Begley v. Mathews, supra; Tonker v. Mathews,* 412 F.Supp. 823 (D.C. Va.1976); *Puckett v. Mathews,* 420 F.Supp. 364 (D.C.Va.1976). The result of construing evidence favorably to good faith claimants in the manner herein directed will not automatically render all miners who filed for benefits under Part B recipients of lifetime compensation. Such miners must prove that total disability due to black lung resulted from their employment in the coal industry. It will, however, provide a more just means of compensating claimants in terms of medical eligibility determinations.

These cases are, respectively, remanded to the Secretary for further proceedings consistent with this opinion. Adequate consideration must be accorded post-June 30, 1973 medical evidence, if it relates back to June 30, 1973. Any doubts which arise as to when black lung caused total disability are to be resolved in favor of these good faith claimants.

*Paluso* is affirmed. *Kalekas* is remanded. Upon reconsideration by the Secretary and in all proceedings undertaken, the claimants are to be accorded the presumptions and inferences set forth in this opinion.