**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT of LABOR, Petitioner,**

v.

**Joaquin GURULE, Respondent.**

**No. 80–1091.**

United States Court of Appeals,
Tenth Circuit.

Argued May 15, 1981.

Decided July 13, 1981.

---

**3.** See discussion of the facts and evidence in the Oklahoma appellate opinion, 562 P.2d at 933–936.

final order by the Benefits Review Board (Board) upholding an award of black lung benefits to Joaquin Gurule (Gurule) pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969 (Act) as amended, 30 U.S.C.A. § 901, *et seq.*, which changed the benefit onset date from February 1, 1975 to January 1, 1974.

Gurule filed his application for black lung benefits on December 21, 1973. By order filed April 13, 1977, a hearing officer for the Department of Labor denied Gurule's claim for benefits. Gurule appealed that decision to the Board. The Board vacated the hearing officer's order and remanded the case for a determination of the number of years Gurule was employed in coal mines in light of 20 CFR § 440.414(b)(4) and for reconsideration of any effects that the Black Lung Reform Act of 1977, with its implementing regulations 20 CFR Part 727, may have on Gurule's claim.

On October 20, 1978, the hearing officer found that Gurule had twelve years of coal mine employment, that blood gas results and other medical evidence indicated total disability due to pneumoconiosis and that benefits should commence on March 1, 1975.[1]

Gurule appealed to the Board contending that the onset date of March 1, 1975, was not supported by substantial evidence and incorrect as a matter of law. Gurule asserted that benefits should begin December 1, 1973, the month his claim was originally filed as provided by 20 CFR § 725.503(b). The Director, in response to Gurule's contention, claimed that February 1, 1975 was the proper benefit onset date because a blood gas study dated February 6, 1975, was the first medical evidence indicating the existence of total disability.

On November 23, 1979, the Board affirmed the hearing officer's determination of Gurule's entitlement to black lung benefits, but vacated the March 1, 1975 onset

J. Michael O'Neill, Atty., Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, and Belva D. Newsome, U. S. Dept. of Labor, Washington, D. C., on brief), for petitioner.

Richard Rosenstock, Chama, N. M., for respondent.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

The Director, Office of Workers' Compensation Programs, United States Department of Labor (Director) petitions for review of a

---

1. Primary reliance was placed on Dr. Bernstein's report dated March 6, 1975, in finding total disability.

date. Applying regulations 20 CFR § 725.-503(b) and 20 CFR § 727.303(b), the Board concluded that the proper onset date was January 1, 1974.

The Director petitioned this court for review of the Board's final order pursuant to 33 U.S.C.A. § 921(c),[2] contending that the Board exceeded its scope of review by selecting January 1, 1974 as the benefit onset date.

The Board's scope of review is governed by the substantial evidence standard as provided by statute [3] and by procedural regulations.[4]

Initially, the Board found that Gurule filed his claim for benefits on December 21, 1973 and that claims filed between July 1, 1973 and December 31, 1973 were considered "transition period" claims. 30 U.S.C.A. § 925(a). Next, the Board applied 20 CFR § 725.1(c) [5] to Gurule's December 21, 1973 filing date and characterized the claim as a section 415 or Part C claim.

The Board then determined that Part 725 of the Secretary of Labor's implementing regulations was applicable to Part C claims, which were considered under Section 435 of the Act and Part 727 of the implementing regulations. 20 CFR § 725.2(b). *See also* 20 CFR § 727.4(a).

In concluding this winding regulatory/statutory trail, the Board recognized that Gurule's benefit onset date would be properly determined by combined application of 20 CFR § 725.501 and 20 CFR § 725.503(b). The two subsections are as follows:

725.501 Payment provisions generally.

The provisions of this subpart govern the payment of benefits to claimants whose claims are approved for payment under section 415 and part C of title IV of the act or approved after review under section 435 of the act and part 727 of this subchapter.

725.503(b) Date from which benefits are payable.

In the case of a miner who is totally disabled due to pneumoconiosis, benefits are payable to such miner beginning with the month of onset of total disability. *Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed,* or the month during which the claimant elected review under Part 727 of this subchapter. [Emphasis supplied].

and 20 CFR § 802.404(a) states that:
(a) In its decision the Board shall affirm, modify, or set aside the decision or order appealed from, and may remand the case for action or proceedings consistent with the decision of the Board. The consent of the parties shall not be a prerequisite to a remand ordered by the Board.

---

2. Hearings and appeals under the Federal Mine Safety and Health Act are governed by procedures set forth in the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C.A. § 919–921 (1976).

3. 33 U.S.C.A. § 921(b)(3) as incorporated by 30 U.S.C.A. § 931(a) states in pertinent part:
The Board's order shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.

4. 20 CFR § 802.301 provides that:
The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.

5. (c) *Section 415.* Claims filed by a miner between July 1 and December 31, 1973, are adjudicated and paid under section 415. Section 415 provides that a claim filed between the appropriate dates *shall be filed with and* adjudicated by the Secretary of Labor under certain incorporated provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. 901 et seq.)
  \* \* \* \* \* \*
A claim filed under section 415 is for all purposes considered as if it were a part C claim (see paragraph (d) of this section) and the provisions of part C of title IV of the Act are fully applicable to a section 415 claim except as is otherwise provided in section 415.

After establishing this framework, the Board proceeded to review the record to decide whether substantial evidence supported the hearing officer's March 1975 benefit onset date determination.

The record indicated that x-rays taken in November, 1973 and September, 1975, showed no signs of pneumoconiosis. Additionally, pulmonary function studies performed in October and May, 1974, produced values too high to establish total disability due to pneumoconiosis. The only indicia of total disability due to pneumoconiosis was found in blood gas results obtained by Dr. Goldberg on February 6, 1975.[6] [R., Vol. IV, pp. C–1–2].

The Board found these blood gas results, pC02–26.5 and p02–48.3, to be well within the criteria for establishing total disability pursuant to 20 CFR § 727.203(a)(3). [R., Vol. I, p. 18]. In fact, the Board stated that "These values are clearly indicative of a severe respiratory or pulmonary impairment." However, the Board found that even though the blood gas study detected significant pneumoconiosis, a single blood gas study was insufficient to establish the benefit onset date. In finding that the evidence did not establish Gurule's onset date the Board reasoned:

It is well recognized that pneumoconiosis is often a latent, progressive and insidious disease and therefore evidence establishing total disability due to pneumoconiosis may relate backward in time to establish an earlier onset date *in the absence of* earlier contradictory like evidence. *See Begley v. Mathews*, 554 F.2d 1345 (6th Cir. 1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). Thus, *it was impossible for the hearing officer to have determined from the record* in this case *that the claimant was not totally disabled due to pneumoconiosis* as

manifested by a diffusion defect and therefore, not entitled to benefits *during the period of time immediately preceding the date of the blood gas study*. The Board holds, therefore, that the medical evidence of record in this case does not establish the date of onset of total disability due to pneumoconiosis as required by Section 725.503(b) of the regulations. [R., Vol. I, p. 20]. [Footnote omitted]. [Emphasis supplied].

Upon finding that the evidence did not establish the month of onset, the Board applied 20 CFR § 727.303(b):

A claim filed under section 415 of the act which is reviewed under this part shall for all purposes be considered as if it was filed on January 1, 1974, under part C of title IV of the act.

The Board thus concluded that where the evidence does not establish the month of onset, section 415 dictates a determination that benefits shall be payable beginning with the month the claim was "filed", January 1, 1974. 20 CFR § 725.503(b) and 20 CFR § 727.303(b).

■ On review, the court of appeals must scrutinize the Board's decisions for errors of law and for adherence to the substantial evidence standard governing the Board's review of the administrative law judge's factual determinations. *Bumble Bee Seafoods v. Director, Officer of Workers' Compensation Programs*, 629 F.2d 1327 (9th Cir. 1980).

We first turn to the issue whether the Board adhered to the substantial evidence standard of review. The Director contends that "the Board made a factual determination itself that the blood gas study findings were 'clearly indicative of a severe respiratory or pulmonary impairment.' On the basis of that factual determination, the Board then related the findings back from February 6, 1975 until January 1, 1974,

---

**6.** A blood gas study is a more exacting test which measures gas exchange between the lung alveoli and the blood, thus reflecting the lungs' ability to take oxygen from the air and get it back into the bloodstream in utilizable form. [R., Vol. I, pp. 18–19]. *See also: Perkins v. Ryan Creek Coal Co., Inc.*, 10 BRBS 178, BRB ab. 77–324 BLA (Feb. 28, 1979).

making a second factual determination that this was a 'relatively short time'." [Pet. Br. p. 11]. In our view, the Director's interpretation of the Board's reasoning ignores and misconstrues the actual basis for the Board's decision. The Board did not "relate back" the blood gas study results to the date of filing as the Director maintains. *See Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977) and *Paluso v. Mathews,* 573 F.2d 4 (10th Cir. 1978). Instead, the Board relied on *Begley* and *Paluso* for the proposition that pneumoconiosis is a "latent, progressive and insidious disease" making exact onset date determinations difficult when only one test exists indicating total disability.

■ Applying that proposition, the Board determined that it was impossible to use February 6, 1975, the date of a blood gas study indicating severe respiratory or pulmonary impairment, to establish an onset date because total disability had to exist prior to the blood gas study date in light of the diffuse nature of the disease and its advanced state, as demonstrated by the blood gas results. Thus, the Board simply found that the hearing officer's onset date determination was not supported by substantial evidence. In the absence of an onset date, 20 CFR § 725.503(b) and 20 CFR § 727.303(b) became operative. Thus, the Board simply applied the Secretary of Labor's implementing regulations to arrive at an onset date. As we stated in *Paluso, supra,* "Any doubts which arise as to when black lung caused total disability are to be resolved in favor of those good faith claimants." The Board's decision was in keeping with the spirit of that policy statement.

The Director declines to address any of the regulations used by the Board in its section 415 or "transition" claim analysis. Instead, the Director prefers to characterize the Board's decision as "factual determinations" and to generally assert "de novo" review, encouraging this court to conclude that because the Board determined an onset date, it necessarily made a factual determination in excess of its scope of review. As we view it, the Director has, for whatever reason, failed to recognize that the onset date arrived at by the Board was accomplished pursuant to application of the Secretary of Labor's own regulations. The Board did not make a factual determination in arriving at the January 1, 1974 benefit onset date. Accordingly, we conclude that the Board did not violate the substantial evidence standard.

Next, we must determine whether the Board committed errors of law in its application of the regulations. In reviewing rulings of the Board, this court generally must defer to the Board in its role as interpreter of the Act. *National Steel & Shipbuilding v. Bonner,* 600 F.2d 1288 (9th Cir. 1979). *See Smith v. Califano,* 597 F.2d 152 (9th Cir. 1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Additionally, resolution of statutory construction issues in Longshoremen's and Harbor Workers' Compensation Act cases by the Benefits Review Board are to be affirmed if a reasonable legal basis supports the Board's conclusions. *Alabama Dry Dock & Shipbuilding Co. v. Kininess,* 554 F.2d 176 (5th Cir. 1977); *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977). After careful reading and cross referencing, we conclude that the Board correctly and cogently applied the entangled morass of regulations promulgated by the Secretary of Labor in their application to black lung benefit claims.

For the above mentioned reasons, we hold that the Board did not exceed the scope of its review in determining that January 1, 1974 was the proper benefit onset date.

WE AFFIRM THE BOARD'S DECISION.