PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TROUT UNLIMITED; COLORADO
TROUT UNLIMITED; RONALD W.
ALBERT,

       Plaintiffs-Appellees-
       Cross-Appellants,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE; USDA FOREST
SERVICE; DAN GLICKMAN; JACK
WARD THOMAS, Chief, United
States Forest Service; JAMES R.
LYONS, Under Secretary for Natural
Resources and Conversation, U.S.
Department of Agriculture;
ELIZABETH ESTILL, Regional
Forester, Rocky Mountain Region,
U.S. Forest Service; M. M.
UNDERWOOD, Forest Supervisor,
Arapaho and Roosevelt National
Forests,

       Defendants-
       Cross-Appellees,

and

THE WATER SUPPLY AND
STORAGE COMPANY, a
Colorado nonprofit corporation;

Nos.  04-1317, 04-1346

CITY OF GREELEY, a Colorado municipal corporation; CITY OF GREELEY WATER AND SEWER BOARD; COLORADO WATER CONSERVATION BOARD; COLORADO STATE ENGINEER,

          Defendants-Intervenors-Appellants-Cross-Appellees,

------------------------------------

STATE OF IDAHO; STATE OF NEVADA; STATE OF NORTH DAKOTA; STATE OF UTAH; STATE OF WYOMING; SOUTHEASTERN COLORADO WATER CONSERVANCY DISTRICT; COLORADO FARM BUREAU; NORTHERN COLORADO WATER CONSERVANCY DISTRICT; UPPER ARKANSAS WATER CONSERVANCY DISTRICT; SOUTHWESTERN CONSERVATION DISTRICT; RIO GRANDE WATER CONSERVATION DISTRICT; BUILDING INDUSTRY ASSOCIATION OF WASHINGT0N; WASHINGTON STATE FARM BUREAU; WASHINGTON STATE GRANGE; IDAHO FARM BUREAU FEDERATION; EARLY WINTERS DITCH COMPANY, INC.; PACIFIC LEGAL FOUNDATION,

          Amici Curiae.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 96-WY-2686-WD)**

Carol D. Angel, First Assistant Attorney General, Colorado State Attorney General's Office (Ken Salazar, Attorney General, Alan Gilbert, Solicitor General, Peter J. Ampe, Assistant Attorney General, Colorado State Attorney General's Office with her on the briefs, and John W. Suthers, Attorney General and Allison Eid, Solicitor General, with her on the reply brief), Denver, Colorado, for Defendant-Intervenor-Appellant-Cross-Appellee Colorado State Engineer and Colorado Water Conservation Board.

William R. Fischer, Fischer, Brown & Gunn, P.C., Fort Collins, Colorado (James S. Witwer, Trout, Raley, Montano, Witwer & Freeman, P.C., Denver, Colorado, John A. Kolanz, Assistant City Attorney, Greeley City Attorney's Office, Greeley, Colorado, with him on the brief for Defendants-Intervenors-Appellants-Cross-Appellees The City of Greeley and Greeley Water and Sewer Board), for Defendant-Intervenor-Appellant-Cross-Appellee The Water Supply and Storage Company.

Michael K. Murphy, Of Counsel, Gibson, Dunn & Crutcher, LLP, Washington, D.C. (Christopher H. Buckley, Jr., Of Counsel, Gibson, Dunn & Crutcher, LLP, Washington, D.C., J. Gregory Whitehair, Robert C. Marshall, Gibson, Dunn & Crutcher, LLP, Denver, Colorado, with him on the briefs) for Plaintiffs-Appellees-Cross-Appellants Trout Unlimited, Colorado Trout Unlimited and Ronald W. Albert.

Ellen J. Durkee, United States Department of Justice, Washington, D.C. (Kelly A. Johnson, Acting Assistant Attorney General, Environment & Natural Resources Division, David W. Gehlert, Todd Aagaard, Robert H. Oakley, U.S. Department of Justice, Washington, D.C., Lois Witte, Of Counsel, Office of the General Counsel, Department of Agriculture, Denver, Colorado, with her on the briefs) for Defendants-Cross-Appellees.

Lawrence G. Wasden, Attorney General, Clive J. Strong, Chief, Natural Resources Division, Clay R. Smith, Deputy Attorneys General, Boise, Idaho, for

State of Idaho, Brian Sandoval, Attorney General, Carson City, Nevada, for State of Nevada, Wayne Stenehjem, Attorney General, Bismarck, North Dakota, for State of North Dakota, Larry Long, Attorney General, Pierre, South Dakota, for State of South Dakota, Mark Shurtleff, Attorney General, Salt Lake City, Utah, for State of Utah, Patrick J. Crank, Attorney General, Cheyenne, Wyoming, for State of Wyoming, filed a combined amici curiae brief.

Robin L. Rivett, Pacific Legal Foundation, Sacramento California, Russell C. Brooks, Pacific Legal Foundation, Bellevue, Washington, filed an amici curiae brief on behalf of Building Industry Association of Washington, Washington State Farm Bureau, Washington State Grange, Idaho Farm Bureau Federation, Early Winters Ditch Company and Pacific Legal Foundation.

Lee E. Miller, Alix L. Joseph, Burns, Figa & Will, P.C., Englewood, Colorado, for Southeastern Colorado Water Conservancy District and Colorado Farm Bureau, Robert V. Trout, Trout, Witwer & Freeman, P.C., Denver, Colorado, for Northern Colorado Water Conservancy District, Julianne M. Woldridge, MacDougall, Woldridge & Worley, P.C., Colorado Springs, Colorado, for Upper Arkansas Water Conservancy District, David W. Robbins, Hill & Robbins, P.C., Denver, Colorado, for Southwestern Water Conservation District and Rio Grande Water Conservation District, filed a combined amici curiae brief.

---

Before **MURPHY**, **ANDERSON** and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

After conducting an environmental review, the United States Forest Service issued a special-use permit authorizing the Water Supply and Storage Co. ("WSSC") to store water on certain National Forest lands underlying the Long Draw Reservoir west of Fort Collins, Colorado.  The United States District Court for the District of Colorado determined the Forest Service's decision violated the

-4-

Federal Land Policy and Management Act ("FLPMA"). The district court reversed and remanded the Forest Service's decision. WSSC, the City of Greeley, the Greeley Water and Sewer Board, the State Engineer of the State of Colorado, and the Colorado Water Conservation Board seek review of the district court's order. Because this court lacks jurisdiction, we **dismiss** the appeal.

## II.    BACKGROUND

Long Draw Reservoir is a water storage facility in the Roosevelt National Forest. It is located on La Poudre Pass Creek, a tributary of the Cache La Poudre River. The original reservoir was formed following completion of the Long Draw Dam in 1929. Almost thirty years later, the reservoir was expanded. The expansion inundated an additional 390 acres of National Forest land.

WSSC holds an easement which permits it to store water on National Forest land flooded by the original Long Draw Reservoir. It has no comparable easement, however, on the additional 390 acres of National Forest land that was submerged when Long Draw Reservoir was expanded. WSSC's authority to store water on this additional land stems from special-use permits issued by the Forest Service.

The Forest Service first authorized WSSC to operate and maintain the expanded Long Draw Reservoir in 1980. The agency amended the permit a year later, extending its terms until December 31, 1991. The amended permit noted

future permits would be subject to conditions imposed by the Forest Service. In 1991 and thereafter, the agency further extended the term of the permit to allow it time to analyze potential environmental impacts associated with renewing WSSC's authorization to store water on National Forest land.

The upper Cache La Poudre drainage provides habitat for a variety of fish species, and water from La Poudre Pass Creek is vital to several threatened and endangered species. Typically, however, WSSC releases no water from Long Draw Reservoir to La Poudre Pass Creek between November and March or April. As a result, La Poudre Pass Creek between the Long Draw Dam and the confluence with the Cache La Poudre River is effectively dry during the winter months. The Forest Service has concluded lack of winter flow causes a nearly complete loss of aquatic habitat in some locations and may preclude the maintenance of self-sustaining fish populations in La Poudre Pass Creek below Long Draw Reservoir.

In 1993, the Forest Service issued a Draft Environmental Impact Statement ("DEIS") on permit renewal for Long Draw Reservoir. The DEIS identified four alternatives. Alternative B, the Forest Service's proposed action, suggested issuing a special-use permit to WSSC with the understanding that WSSC would voluntarily commit to operating Long Draw Reservoir in accordance with a joint operating plan ("JOP") submitted by WSSC and the cities of Fort Collins and

Greeley, Colorado. The JOP purported to provide for additional winter flows to the Cache La Poudre River, but did not provide for winter flow in La Poudre Pass Creek. Alternative C, the "Environmentally Preferred Alternative," proposed issuing the special-use permit with a "bypass flow" requirement. The bypass flow requirement would compel WSSC to release water from Long Draw Reservoir during the winter months in order to maintain minimum flows in La Poudre Pass Creek.

The Region VIII Administrator for the Environmental Protection Agency, the Acting Superintendent of Rocky Mountain National Park, and the Forest Service's own interdisciplinary team urged the Forest Service to impose a bypass flow requirement when it issued the Long Draw Reservoir permit. Nevertheless, the agency granted WSSC its land use authorization without a bypass flow requirement. Instead, the agency conditioned the permit upon WSSC's participation in a revised version of the JOP. Six months after the Forest Service issued its decision, it executed a fifty-year water facility easement to WSSC for the use and operation of Long Draw Dam and the expanded reservoir.

Following an unsuccessful administrative appeal, Trout Unlimited ("TU") challenged the Forest Service's decision in federal court and moved for summary judgment. WSSC, the City of Greeley, the Greeley Water and Sewer Board, the State Engineer of the State of Colorado, and the Colorado Water Conservation

Board intervened as defendants. The district court dismissed or denied all but one of TU's claims for relief. It granted summary judgment, however, on TU's claim that the Forest Service's issuance of the Long Draw permit violated FLPMA. The court reversed the Forest Service's decision and remanded the matter to the agency "for further consideration in accordance with its obligations under FLPMA." *Trout Unlimited v. U.S. Dep't of Agric.*, 320 F. Supp. 2d 1090, 1115–16 (D. Colo. 2004).

Defendant-Intervenors appeal the district court's decision. They assert the Forest Service lacks authority to impose bypass flow requirements as a condition of permit issuance and claim the district court erred in granting summary judgment to TU. TU cross-appeals, raising claims under the National Forest Management Act ("NFMA") and the National Environmental Policy Act ("NEPA").

In addition to the merits issues, the parties have submitted three motions for this court's consideration. First, the Forest Service, with the support of TU, moves to dismiss for lack of appellate jurisdiction. Second, Defendant-Intervenors move to certify questions of state law. Third, Washington Agricultural Legal Foundation, Washington State Potato Commission, Washington State Dairy Federation, and New Mexico Cattle Growers Association (collectively Washington Agricultural) move for leave to submit an amicus brief.

## III. ANALYSIS

Before addressing the substance of the parties' claims, this court must first resolve the jurisdictional issue raised by the Forest Service in its motion to dismiss. *See In re Universal Serv. Fund Tel. Billing Practice Litig.*, 428 F.3d 940, 942 (10th Cir. 2005) (noting this court's "first responsibility is to determine whether [it has] jurisdiction"). The Forest Service claims the district court's decision that the Long Draw permit violated FLPMA is not a final, appealable order because the court remanded the matter for further consideration by the agency. Defendant-Intervenors, on the other hand, contend appellate jurisdiction is appropriate under § 1291 whenever a case raises an important issue of federalism. They allege jurisdiction is proper in this case because the district court's order raises an important question of federalism by "sow[ing] great uncertainty and eviscerat[ing] the traditional state power over . . . water allocation systems." Defendant-Intervenors' Resp. to Mot. to Dismiss at 9.

This court has jurisdiction over final decisions of the federal district courts pursuant to 28 U.S.C. § 1291. Jurisdiction under § 1291 generally is contingent upon "the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quotations omitted). Under § 1291, "remand by a district court to an administrative agency for further

proceedings is ordinarily not appealable because it is not a final decision." *Bender v. Clark*, 744 F.2d 1424, 1426–27 (10th Cir. 1984). Nonetheless, this court has recognized that the "administrative-remand rule" is not without exception. *Baca-Prieto v. Guigni*, 95 F.3d 1006, 1008 (10th Cir. 1996).

In the context of a district court order remanding a matter to an administrative agency, jurisdiction may be appropriate when the issue presented is both urgent and important. *Bender*, 744 F.2d at 1427. If these two conditions are met, this court will apply a balancing test and assert jurisdiction if "the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Id.*; *see also Cotton Petroleum Corp. v. U.S. Dep't of Interior*, 870 F.2d 1515, 1522 (10th Cir. 1989). This court has warned, however, that *Bender* and *Cotton Petroleum* "must be narrowly construed . . . to preserve the vitality of § 1291." *Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir. 1993).

In *Bender*, this court applied the exception to the administrative-remand rule when we determined the case involved a "serious and unsettled" question regarding federal oil and gas leasing *and* was urgent because refusal to assert jurisdiction might have foreclosed future appellate review of the issue at later stages in the proceeding. *Id.* at 1428; *see also id.* at 1428 n.3 (stating both urgency and importance elements contributed to the court's determination that it

had jurisdiction to hear the appeal). In fact, we noted the possibility of injustice due to delay was "perhaps [the] most important" factor in our jurisdictional calculus. *Id*. at 1428.[1] Likewise, when this court applied the exception to the administrative-remand rule in *Cotton Petroleum*, we did not rely solely on the importance of the issue presented when we resolved the jurisdictional question. Instead, this court stated explicitly that jurisdiction was appropriate because "delay in review . . . would likely result in further disputes and litigation, confusion and danger of injustice." *Cotton Petroleum*, 870 F.2d at 1522.

Defendant-Intervenors make the conclusory allegation that delaying appellate review of the district court's Long Draw decision will "result in uncertainty, additional litigation, confusion and a very real danger of injustice." Defendant-Intervenors' Resp. to Mot. to Dismiss at 11. They offer no support for this statement, however, and we can discern no reason why this case requires urgent or immediate judicial consideration. In this case, delayed review will not

---

[1]We recognize *Bender* cites *Paluso v. Matthews*, 573 F.2d 4, 8 (10th Cir. 1978), for the proposition that an "*important* issue of federalism alone [is] enough to tip the scale in favor of immediate review." *Bender v. Clark*, 744 F.2d 1424, 1428 (10th Cir. 1984). This dictum, however, does not change our analysis. *Paluso* itself recognized that denial of justice due to delay was necessary for this court to exercise its jurisdiction over a district court's remand to an administrative agency. *See* 573 F.2d at 8. In that case, the court resolved the jurisdictional question by "balancing the inconvenience and costs that accompany piecemeal reviews, on the one hand, and the *danger of denying justice by delay*, on the other hand." *Id*. (emphasis added).

result in injustice. Defendant-Intervenors do not claim the Forest Service will require implementation of bypass flows during the remand process.[2] If the Forest Service's decision on remand is not satisfactory, Defendant-Intervenors can pursue administrative remedies and, if necessary, seek review in the district and appellate courts at a later stage in the proceedings. Finally, Defendant-Intervenors have not supported their bare assertion that delay in judicial review has resulted in, or will result in, additional disputes and litigation.

In sum, this case does not fall within the narrow exception to the administrative-remand rule. Although the issues presented may be important, the need for judicial review is not urgent.[3] Accordingly, this court lacks jurisdiction to hear the appeal.

## IV.   CONCLUSION

---

[2]Defendant-Intervenors contend postponed review will result in cost, delay, and uncertainty during the remand process. These inconveniences, however, do not create appellate jurisdiction where it does not otherwise exist. *See Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir. 1993) (noting that while the "rules of appealability" may sometimes add time or expense to the litigation process, they have "the great virtue of forestalling the delay, harassment, expense, and duplication that could result from multiple or ill-timed appeals" (quotation omitted)).

[3]Because we conclude at the outset that appellate review is not urgent, there is no need to balance "the danger of injustice by delaying appellate review" against "the inconvenience and costs of piecemeal review." *Bender*, 744 F.2d at 1427.

For the reasons stated above, Defendant-Appellee's motion to dismiss is **granted**. Defendant-Intervenors' appeal and TU's cross-appeal are **dismissed** for lack of jurisdiction. Because this court does not have jurisdiction over the issues raised in Defendant-Intervenors' motion to certify questions of state law, that motion is **dismissed** as moot. Similarly, because we lack jurisdiction over the issues raised in its proposed amicus brief, Washington Agricultural's motion for leave to file an amicus brief is **dismissed** as moot.