Ernest **GUTIERREZ**, Plaintiff-Appellee,

v.

Joseph A. **CALIFANO, Jr.**, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 78–1496.

United States Court of Appeals, Tenth Circuit.

Submitted on Briefs Sept. 14, 1979.

Decided Dec. 14, 1979.

Rehearing Denied Jan. 21, 1980.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Joseph F. Dolan, U. S. Atty., Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., and Alan M. Grochal, Dept. of Health, Ed. and Welfare, Baltimore, Md., for defendant-appellant.

James R. Collins, Denver, Colo., for plaintiff-appellee.

Before SETH, Chief Judge, McKAY, Circuit Judge, and MATSCH, District Judge.*

McKAY, Circuit Judge.

The Secretary of Health, Education and Welfare appeals from a district court order declaring Gutierrez eligible for benefits under the Federal Coal Mine Health and Safety Act (Act), as amended, 30 U.S.C. § 901 *et seq.* The district court held that a prior decision of the Secretary denying compensation was not supported by substantial evidence and therefore required reversal. Because we believe the administrative decision to have been supported by substantial evidence, we reverse the order of the district court and reinstate the Secretary's prior decision.

### I.

Gutierrez, a former miner, claims total disability from pneumoconiosis (commonly known as black lung disease), a condition compensable under the Act. 30 U.S.C. §§ 921, 922(a)(1). Under the applicable regulation, the claimant must show that he is totally disabled due to pneumoconiosis caused by employment in a coal mine. 20 C.F.R. § 410.410. A claimant like Gutierrez, who applied for benefits by June 30, 1973,[1] may establish eligibility by meeting either the requirements of particular "interim adjudicatory rules," 20 C.F.R. § 410.490, or the "permanent criteria" found in 20 C.F.R. §§ 410.412–410.462. *See* 20 C.F.R. § 410.490(e). Gutierrez' claim was denied at several levels of review within the agency. Following an agency Appeals Council affirmance of the decision of the administrative law judge, the denial of benefits became the final decision of the Secretary.

Gutierrez filed an action for judicial review of the Secretary's order. The district court referred the matter to a magistrate, who recommended affirmance of the Secretary's decision. The court agreed that Gutierrez did not qualify under the interim

rules. It held, however, that the results of a blood gas study performed on Gutierrez in February 1975 constituted "other relevant evidence," 20 C.F.R. § 410.414(c), sufficient to create an unrebutted presumption of totally disabling pneumoconiosis. *See* 20 C.F.R. §§ 410.426(d), 410.414(b). To reach this conclusion, the district court (1) rounded off the blood gas data so as to fall within the requirements of the regulations promulgated under the Act; and (2) determined that the blood gas results created eligibility for benefits as of February 1975, even though the cutoff date for HEW jurisdiction was June 30, 1973. The Secretary challenges both of these determinations.

### II.

Regulations promulgated by HEW provide the combinations of arterial oxygen and carbon dioxide pressures necessary to create a presumption of total disability due to pneumoconiosis:

Arterial oxygen tension at rest (sitting or standing) or during exercise and simultaneously determined arterial $p^{CO2}$ equal to, or less than, the values specified in the following table:

| Arterial $p^{CO2}$ (mm. Hg) | and | Arterial $p^{O2}$ equal to or less than (mm. Hg) |
|---|---|---|
| 30 or below | | 65 |
| 31 | | 64 |
| 32 | | 63 |
| 33 | | 62 |
| 34 | | 61 |
| 35 | | 60 |
| 36 | | 59 |
| 37 | | 58 |
| 38 | | 57 |
| 39 | | 56 |
| 40 or above | | 55 |

20 C.F.R. Ch. III, Part 410, Subpart D, App. In a blood gas test on February 4, 1975, Gutierrez recorded a $p^{CO2}$ value of 34.4 and a $p^{O2}$ value of 61.4. The district court felt that "[c]ommon sense dictates that plain-

---

* Of the United States District Court for the District of Colorado, sitting by designation.

1. The June 30, 1973, date is important because after that date jurisdiction to administer pneumoconiosis disability benefits shifted from the Secretary of HEW to the Secretary of Labor.

tiff's results should be rounded off to the nearest point, especially when the table itself gives only whole-number values." Record, vol. 1, at 61–62 (emphasis deleted). As a result, the court considered the test results to be 34 and 61, respectively, sufficient to create the presumption of total disability. We hold that the district court's determination was erroneous.

We agree with the district court that doubts should be resolved in favor of the disabled miner. Record, vol. 1, at 62. We disagree, however, that the meaning of the table printed above is in doubt or that the dictates of common sense point in the direction perceived by the court. The figures listed in the table appear to us clearly to constitute the boundaries of *ranges* of values. The Secretary apparently so interpreted the table. Under this interpretation the Gutierrez data fall outside any presumption-creating limits implied by the table. The blood gas results therefore create no presumption to overcome the substantial evidence in the record justifying the Secretary's determination.

### III.

Because of our treatment of the blood gas data, we need not decide whether the data created eligibility as of the testing date or whether the data may "relate back" to establish Gutierrez' status as of June 30, 1973. *See Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977). We note only that the district court in its memorandum and order necessarily relied on a decision of this court, *Paluso v. Mathews,* 562 F.2d 33 (10th Cir. 1977), that was subsequently modified on rehearing. *Paluso v. Mathews,* 573 F.2d 4 (10th Cir. 1978).

REVERSED.