**AMAX COAL COMPANY, Petitioner,**

v.

**Job W. ANDERSON & Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 83–1977.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1985.

Decided Aug. 22, 1985.

Mark Solomons, Kilcullen, Wilson & Kill-cullen, Washington, D.C., for petitioner.

Joan S. Meier, Jenner & Block, Chicago, Ill., for respondents.

Before BAUER and ESCHBACH, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

Amax Coal Company ("Amax") petitions this court for review of a grant of benefits to Job Anderson under the Black Lung Benefits Act ("Act"), Title IV of the Federal Coal Mine Health and Safety Act, 30 U.S.C. §§ 901–960. Amax's primary contention in support of review is that the Administrative Law Judge and the Benefits Review Board improperly invoked the interim presumption of disability due to pneumoconiosis, *see* 20 C.F.R. § 727.203(a). We deny the petition.

## I.

Job Anderson was employed by coal mines for approximately forty-two years. In 1978, after experiencing declining health, he retired and filed a claim for benefits under the Act. The Department of Labor approved the claim and designated Amax as the coal operator liable to pay Anderson's benefits. Amax contested the grant of benefits, and a hearing was held on Anderson's claim before an administrative law judge.

Under regulations promulgated by the Department of Labor, a miner is entitled to a rebuttable presumption of disability due to pneumoconiosis if he has worked in coal mines for at least ten years and can produce certain types of medical evidence. 20 C.F.R. § 727.203(a). The record contained the results of several pulmonary function studies, or ventilatory studies, which measure respiratory activity and lung capacity. The studies produce two relevant measurements: forced expiratory volume ("FEV") and maximum voluntary ventilation ("MVV"). The regulations contain a table by which the FEV and MVV measurements obtained through a pulmonary function study may be compared to a claimant's height. If the FEV and MVV levels obtained are equal to or less than those listed for the miner's height in the table, and the study meets certain quality standards, the miner is entitled to the invocation of the presumption of disability. 20 C.F.R. § 727.203(a)(2).

On the basis of Anderson's over ten years of coal mine employment and two pulmonary function studies in the record, the ALJ found that Anderson was entitled to invoke the presumption of disability. The ALJ also found that Amax had not successfully rebutted the presumption. He therefore awarded Anderson benefits under the Act.

Amax appealed the decision to the Benefits Review Board, arguing that the pre-

sumption had been erroneously invoked.[1] The Board agreed with Amax that the ALJ's reliance on a March 1979 study was erroneous, as the results documented by that study were not based upon three attempts by the miner, and therefore did not meet the quality requirements of 20 C.F.R. § 410.430. However, the Board rejected Amax's claim that a pulmonary function study conducted in May 1979, and also relied on by the ALJ, was similarly flawed, as well as Amax's contention that the ALJ had failed to consider the results of an August 1979 study (which, the Board noted, also did not meet the quality standards in § 410.430).[2]

Amax's final argument before the Board was based on its interpretation of the table contained in 20 C.F.R. § 727.203(a)(2). Anderson's height is 70½ inches. The table lists height measurements only in whole numbers. Anderson qualifies for invocation of the presumption of disability only if the FEV and MVV values corresponding to a height of 71 inches are available to him; if he is treated as being only 70 inches tall, he cannot qualify for invocation of the presumption. Noting that the regulations give no guidance as to which values are applicable if the miner's height is reported in other than whole inches, the Board found the regulation ambiguous. In interpreting the regulation, it relied on legisla-

tive history indicating Congress's intent that the Act be liberally construed in favor of miners, and held that the ALJ did not err in applying the table values for a 71-inch tall miner. Accordingly, the Board affirmed the decision and order awarding benefits.

## II.

In support of its petition for review, Amax advances three arguments: (1) that the Board impermissibly engaged in fact-finding, (2) that the Board's interpretation of the regulation relieved the claimant of his burden of proof, and (3) that the Board failed to follow applicable precedent.

## A.

The scope of the Board's review of a decision of an administrative law judge is limited by statute: it may review the ALJ's factual determinations only to verify that they are supported by substantial evidence on the record as a whole. 33 U.S.C. § 921(b)(3). Amax argues that the Board exceeded the scope of its authority by making independent factual findings.[3] Specifically, Amax claims that the Board impermissibly found that the May study met the quality standards imposed by the regulations and that the March and August studies did not.[4] It argues, therefore, that the

1. While Amax argued before the Board that it had successfully rebutted the presumption, it does not renew that argument in this court.

2. Amax had argued that the August study successfully rebutted the presumption of disability.

3. *Strand v. Hansen Seaway Service Ltd.*, 614 F.2d 572, 574 (7th Cir.1980), states that a reviewing court "generally must defer to the Board both in its factfinding capacity ... and in its role as interpreter of the [Longshoremen's and Harbor Workers' Compensation Act]." In *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588 (7th Cir. 1985), this court reconsidered its role in reviewing decisions of the Board in black lung cases. We noted that *Strand's* comments concerning the standard of review were based on two Ninth Circuit cases which had, as the Ninth Circuit later acknowledged, "overlooked the actual division of functions between the administrative law judge and the [Benefits Review] Board." *Id.* at 590 (quoting *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629

F.2d 1327, 1329 (9th Cir.1980)). While expressly refusing to consider "what if any vitality our decision in *Strand* retains in cases that do not involve black lung benefits," we held in *Prewitt* that the Board is not a source of facts to which we must defer. The Supreme Court has recently suggested that courts need not defer to the Board's interpretations of statutes. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980).

4. Amax also contends that the Board resolved a factual dispute over the claimant's actual height. Anderson's height is consistently listed on all pages of the pulmonary function studies in the record as 70½ inches, with the exception of the cover sheet of one of the studies, where it is listed as 70 inches. The ALJ implicitly resolved any question about Anderson's height when he applied the standards for a 71-inch miner. Amax did not lodge an objection before the Board to the ALJ's failure to make an explicit

Board should have remanded the case to the ALJ for further consideration.

■ We note preliminarily that Amax did not request a remand before the Board. Moreover, Amax itself argued, with partial success, that the ALJ's decision should be reversed because the studies he relied on did not meet the quality standards of § 410.430. If the Board committed error in making determinations concerning whether those studies meet the standards, then, that error was invited by Amax.

■ The Board did not err, however. There is not now, nor does there appear ever to have been, a conflict concerning the results of the pulmonary function studies of record or whether they conform to the quality standards of § 410.430. That regulation merely requires (in relevant part) that a pulmonary function study be based on the best of three attempts by the miner. The study must also state that the claimant understood and cooperated with the examiner. This is not a case, such as *Director, Office of Workers' Compensation Programs v. Rowe*, 710 F.2d 251 (6th Cir.1983), in which the only evidence relied on by the ALJ in support of invocation of the presumption is found to be insufficient.[5] Amax does not allege that the May test alone would be insufficient to support invocation of the presumption of disability (if the Board's interpretation of the regulation regarding height, *see* part B, *infra*, is correct). Nor is it a case, such as *Consolidation Coal Co. v. Smith*, 699 F.2d 446 (8th Cir.1983), in which the Board decides disputed issues of fact. Where, as here, the Board merely applies a regulation to undisputed facts, it does not exceed its authority. *See Director, Office of Workers' Compensation v. Gurule*, 653 F.2d 1368 (10th Cir.1981).

**B.**

Amax also complains that, by treating Anderson as if he were 71 inches tall when he is in fact 70½ inches tall, the ALJ and the Board have relieved Anderson of his burden of proof. In Amax's view, Anderson must establish that his height meets or exceeds 71 inches before he has met his "burden of proof" and becomes eligible to invoke the disability presumption.

This argument, however, merely begs the question, for if the ALJ's and Board's interpretation of the height requirement is correct, Anderson *has* met his burden of proof. Amax's real disagreement is with the Board's interpretation of the table so as to allow a claimant whose height falls between two listed measurements to "round up" to the next highest measurement. Amax argues that existing caselaw dictates that the listed height measurements be treated as thresholds: in Amax's words, "you either meet them or you don't." Amax contends that such an interpretation is more consistent with the regulatory scheme than the Board's "rounding" approach.

Amax relies primarily on *Gutierrez v. Califano*, 612 F.2d 1247 (10th Cir.1979) and *Bolyard v. Peabody Coal Co.*, 6 Black Lung Reporter 1-767 (1984) (Benefits Review Board) in support of its contention that prior caselaw dictates use of the "threshold" approach Amax advocates. In *Gutierrez*, the court held that the district judge had erroneously rounded off arterial blood gas measurements, and had thereby wrongly allowed the claimant to qualify for

finding in this regard, nor did it argue that there remained a factual dispute to be resolved (although it noted the discrepancy). Its complaint about the Board's acceptance of the 70½ inch figure thus comes too late.

**5.** In *Rowe*, the ALJ had erroneously found the presumption of disability invoked on the basis of a flawed medical report. The Board recognized that the report relied on by the ALJ lacked a required statement that the claimant was disabled due to pneumoconiosis. Nevertheless, it affirmed the grant of benefits because it found that another report, not mentioned by the ALJ, constituted a "documented and reasoned medical opinion" within the meaning of 20 C.F.R. § 727.230(a)(4). Stating that the determination that a medical report is documented and well-reasoned is a credibility determination, the court reversed, holding that such a determination should be made by the ALJ as factfinder in the first instance.

invocation of the disability presumption. In *Bolyard,* the Benefits Review Board (reversing its prior position on the basis of *Gutierrez* ) held that FEV measurements could not be rounded off. The distinction between the measurements involved in those cases and the height listings in this case is that both the blood gas table and the FEV scale list measurements inclusively; both tables clearly state that the qualifying values must be "equal to or less than" the listed tables values.

 The regulatory table involved in this case makes no such provision for height measurements. We agree with the Board that the regulation is in that respect ambiguous. Resort to the legislative history and the purposes of the Act in determining the proper interpretation of the regulation was therefore proper. *Cf. Gutierrez,* 612 F.2d at 1249. While we are not required to defer to the Board's reading of the legislative history, or even to its interpretation of the Act, *see Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980); *Tri-State Terminals, Inc. v. Jesse,* 596 F.2d 752, 757 n. 5 (7th Cir.1979); *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 48–49 (2d Cir.1976), *aff'd sub nom. Northwest Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977),[6] it is abundantly clear from that history that Congress intended ambiguities to be resolved in favor of coverage. *See, e.g.,* S.Rep. No. 92–743, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2305, 2315 ("In the absence of definitive medical conclusions, there is a clear need to resolve doubts in favor of the disabled miner or his survivors.").

■ Since the regulations make no provision for the treatment of fractional measurements, the question before the Board was what to do with such a measurement. It rounded up. Under Amax's view, it

should have rounded down.[7] We will not require the Board to apply the regulations in a niggardly manner when there is no compelling reason to do so, and we find none here.

### III.

We have considered Amax's other arguments and find them to be without merit. Accordingly, the petition for review is denied.

ing up: Anderson's height falls exactly between two measurements.

6. *See supra,* note 3.

7. It is by no means clear, as Amax suggests, that the Board has adopted a policy of always round-