**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

WESTERN ENERGY ALLIANCE; BASELINE MINERALS, INC.; NERD GAS COMPANY, LLC; SAMSON RESOURCES COMPANY,

    Plaintiffs-Appellants,

DOUBLE DEUCE LAND AND MINERALS, INC.; WOLD OIL PROPERTIES, INC.; LARAMIE ENERGY II, LLC,

    Plaintiffs,

AMERICAN PETROLEUM INSTITUTE,

    Plaintiff-Intervenor,

v.

KEN SALAZAR, in his official capacity as Secretary of the United States Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; DON SIMPSON, in his official capacity as Bureau of Land Management, Wyoming State Director; JUAN PALMA, in his official capacity as Bureau of Land Management, Utah State Director; ROBERT ABBEY, in his official capacity as Bureau of Land Management Director,

    Defendants-Appellees,

WYOMING OUTDOOR COUNCIL;

No. 11-8071

WILDERNESS SOCIETY; NATIONAL
WILDLIFE FEDERATION; SOUTHERN
UTAH WILDERNESS ALLIANCE;
NATURAL RESOURCES DEFENSE
COUNCIL, INC.; NATIONAL AUDUBON
SOCIETY; BIODIVERSITY
CONSERVATION ALLIANCE; GREATER
YELLOWSTONE COALITION; CENTER
FOR NATIVE ECOSYSTEMS,

     Defendant-Intervenors-Appellees.

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:10-CV-00226-NDF)**

---

Rebecca W. Watson (Kathryn Haight, Stephen A. Bain, and Nora R. Pincus with her on the briefs) of Welborn Sullivan Meck & Tooley, PC, Denver, Colorado, for Plaintiffs-Appellants.

Melanie R. Kay (Robin L. Cooley on the brief) of Earthjustice, Denver, Colorado, for Defendants-Intervenors-Appellees.

Vivian H.W. Wang, Attorney, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C. (Robert Dreher, Acting Assistant Attorney General; and Joanna Brinkman and David C. Shilton, Attorneys, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., with her on the brief) for Federal Defendants-Appellees.

---

Before **MURPHY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

This litigation concerns whether the Mineral Leasing Act ("the Act" or "MLA"), as amended by the Reform Act of 1987, requires the Secretary of the Interior ("the Secretary") to issue leases for parcels of land to the highest bidding energy company within sixty days of payment to the Bureau of Land Management ("BLM"). Appellants (collectively "Energy Companies") brought suit seeking to compel the Secretary to issue 118 pending leases on which they were the high bidders and more than sixty days had passed since they had paid BLM in full. The district court construed 30 U.S.C. § 266(b)(1)(A) as imposing a mandate on the Secretary *to decide whether to issue* such pending oil and gas leases within sixty days of payment, and ordered BLM to make such decisions regarding the still pending leases of Energy Companies within thirty days. Energy Companies appeal the district court's order and continue to assert that § 266(b)(1)(A) requires the Secretary to *issue* such pending leases within sixty days rather than merely make a decision on whether the leases will be issued. We hold that the district court's order was not a "final decision" for purposes of 28 U.S.C. § 1291. Accordingly, under the administrative-remand rule we lack jurisdiction and DISMISS the appeal.

# I.

## STATUTORY AND REGULATORY BACKGROUND

The MLA and accompanying regulations establish the procedures for development of oil and gas deposits on federal land.[1] The Secretary has authority under the Act to lease all federal lands "which are known or believed to contain oil or gas deposits." 30 U.S.C. § 226(a). BLM state offices administer these leases through lease sales. The lease sales at issue in this case are competitive lease sales, where entities bid at an auction and the highest bidder wins the ability to lease parcels for oil and gas development. *Id.* § 226(b)(1)(A) ("The Secretary shall accept the highest bid from a responsible qualified bidder which is equal to or greater than the national minimum acceptable bid . . . ."). Parcels that will be auctioned are identified by the BLM in a public Notice of Competitive Lease Sale ("Sale Notice").

Prior to issuing a Sale Notice, parcels are reviewed by BLM field offices to determine conformance with the applicable Resource Management Plan ("RMP"). RMPs are area-wide land use plans that specify which areas will be considered for oil and gas development and what conditions will be placed on such development. If the lands are determined to be available for oil and gas development under the

---

[1] The Mineral Leasing Act of 1920 (Pub. L. No. 66-146), as amended, and the Mineral Leasing Act for Acquired Lands (Pub. L. No. 80-382), as amended, provide the legislative authority and framework for federal oil and gas leasing. BLM's implementing regulations are located at 43 C.F.R. pt. 3100.

applicable RPM, the BLM field office conducts an interdisciplinary team review of the parcels, focusing on conflicts with wildlife, habitat, wilderness, land characteristics, planning and other resource values. The interdisciplinary team also evaluates whether new and significant information has emerged since the RMP was adopted that would require further analysis of the environmental impact of oil and gas development on the parcels under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, or whether a determination of NEPA adequacy can be issued. If the NEPA analysis is determined to no longer be valid, the BLM field office will perform an environmental assessment before the lease sale. These pre-leasing review processes can result in parcel rejections, deferrals, and/or stipulations being placed on the leases. *See* 43 C.F.R. §3101.1-3 ("The authorized officer may require stipulations as conditions of lease issuance.").

After these review procedures have been completed, BLM identifies eligible parcels in a Sale Notice, which must be published at least forty-five days before the lease sale takes place. The process of publishing the notice includes a public protest period during which individuals and organizations may file a protest against the inclusion of any or all parcels in the Sale Notice. It is not unusual for BLM to receive protests very close to the date of the sale. If BLM decides to include a protested parcel in the sale, the pending protests are announced at the beginning of the oral auction.

The Sale Notice informs prospective bidders that parcels which are auctioned subject to protest can have further stipulations added to them after the auction, or be withdrawn altogether by BLM. Fed. App. 61 (Notice of Competitive Oil and Gas Lease Sale, August 3, 2010). The high bidder must pay the bid amount to the BLM if it chooses to go forward despite a pending protest. The Sale Notice and the BLM manual also state that protests "must be resolved *before issuance* of the involved lease." *Id.* (emphasis in original); Fed. App. 123 (BLM manual). According to the Sale Notice, BLM "will make every effort to decide the protest within 60 days after the sale." Fed App. 61 (Notice of Competitive Oil and Gas Lease Sale, August 3, 2010). Due to the complexity, numerosity and timing of the protests, however, many leases that are subject to pending protests are not issued within sixty days of payment.[2] If a protested parcel is subsequently withdrawn from leasing, the high bidder is refunded all of the payments it has made to BLM for that parcel. If new stipulations are added to the lease as a result of the protest, the high bidder is given the opportunity to accept the modified lease or reject it and receive a refund. *Id.*

Before the MLA was amended by the Federal Onshore Oil and Gas Leasing

[2]     A 2010 report by the Government Accountability Office found that during fiscal years 2007-2009, seventy-four percent of lease parcels that were subject to competitive bidding were protested, and ninety-one percent of these protested parcels were not issued within sixty days. "Onshore Oil and Gas: BLM's Management of Public Protests to Its Lease Sales Needs Improvement," GAO-10-670 (http://www.gao.gov/products/GAO-10-670), Aplt. App. at 65.

Reform Act of 1987 ("Reform Act"),[3] it was well established that the Secretary

had extremely broad discretion and was not obligated to issue any lease on public

lands. *See Udall v. Tollman*, 380 U.S. 1, 4 (1965) (even though the MLA

"directed that if a lease were issued on such a tract, it had to be issued to the first

qualified applicant, it left the Secretary discretion to refuse to issue any lease at

all on a given tract"). We consistently affirmed the broad discretion afforded to

the Secretary under the MLA. In *Justheim Petroleum Co. v. Dep't of the Interior*,

769 F.2d 668 (10th Cir. 1985), a case arising in the non-competitive bidding

context, we held that "the Secretary is under no requirement to issue or reject

lease applications within a certain time limit." *Id.* at 670. Similarly, in

*McDonald v. Clark*, 771 F.2d 460 (10th Cir. 1985), we concluded that the

Secretary had the discretion to withdraw a lease from the non-competitive leasing

process even after he had determined the first qualified applicant. *Id.* at 463. We

held that until the Secretary actually acts to issue the lease, the applicant has only

a "hope or . . . expectation of a lease" and not a vested right. *Id.*

The MLA, as amended by the Reform Act of 1987, continues to vest the

Secretary with considerable discretion to determine which lands will be leased.

Under 30 U.S.C. § 226(a), "[a]ll lands subject to disposition under this chapter

which are known or believed to contain oil or gas deposits *may be leased* by the

---

[3] The 1987 Federal Onshore Oil and Gas Leasing Reform Act of 1987, Pub. L. No. 100-203, tit. V, § 5101(a), 101 Stat. 1330 (1987) (codified as amended at 30 U.S.C. § 181, *et seq.*).

Secretary," (emphasis added) and the Secretary still retains the authority to determine which lands are "to be leased" under § 266(b)(1)(A). The Reform Act did, however, change the federal onshore leasing process in several respects, including shifting the majority of leases previously offered through a non-competitive bidding process to a competitive bidding process (which explains why virtually all of our pre-Reform Act cases arose in the context of non-competitive bidding). The Reform Act also added the sentence that is at issue in the instant litigation, inserting the requirement that in the competitive bidding context, "[l]eases shall be issued within sixty days following payment by the successful bidder of the remainder of the bonus bid, if any, and the annual rental for the first lease year." 30 U.S.C. § 226(b)(1)(A).

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Energy Companies were the highest qualified bidders on 118 oil and gas leases at ten competitive lease sales held by BLM between 2005 and 2010. In accordance with 30 U.S.C. § 226(b)(1)(A), they paid BLM a bonus bid, one year's rent, and administrative fees for the leases on which they were high bidders. BLM collected a total of $2,017,144.50 for the leases purchased by Energy Companies. Before the parcels were put up for auction, the Environmental Intervenors ("Conservation Groups") had filed protests regarding all 118 parcels.

These pending protests were announced before each parcel was auctioned. In accordance with the BLM manual and the Sale Notices, BLM deferred issuing the leases pending resolution of the protests.

In late 2010, Energy Companies filed suit under the MLA, 30 U.S.C. § 226, Administrative Procedure Act, 5 U.S.C. § 706(1), Mandamus Act, 28 U.S.C. § 1361, and Declaratory Judgment Act, 28 U.S.C. § 2201, against the Secretary of the Interior and a number of other federal defendants (collectively "Federal Defendants") seeking to compel BLM to issue these pending leases for which Energy Companies were high bidders and had submitted payment in accordance with BLM policy. Energy Companies challenge BLM's practice of offering oil and gas leases for sale, accepting payment from the top qualified bidders, and then deferring issuance of those leases pending resolution of pre-bid lease protests, a delay that in some instances can last for years and may ultimately result in stipulations being placed on the leases or the land being closed to leasing entirely. Energy Companies contend that the Secretary must issue all leases within sixty days of payment, regardless of any pending protests. None of the 118 leases that are the subject of this suit were issued within sixty days of payment.

The district court did not accept Energy Companies' argument that § 226(b)(1)(A) requires the Secretary to issue all leases within sixty days of payment. *Western Energy Alliance v. Salazar*, 2011 WL 3737520 at *6 (D. Wyo.

June 29, 2011).  Noting the "longstanding recognition of the legal principle of broad Secretarial discretion under the MLA," *Id.* at *5, the court stated that even after payment to BLM has been made, "[a] top qualified bidder has no legal claim for, nor any vested right to the issuance of [a] federal oil and gas lease . . . ." *Id.* at *3.  The court found that even under the Reform Act, the Secretary's discretion to decide not to issue any lease "does not terminate until the Secretary indicates his acceptance of an application or an offer by issuance of the lease 'with the signature of the appropriate officer affixed thereto.'" *Id.* at *5 (quoting *Justheim*, 769 F.2d at 672).  Reasoning that "the sixty-day provision interjected within Section 226(b)(1)(A) by the Reform Act *must mean something*," *Id.* at *6 (emphasis in original), the district court held that "the successful bidder does have a right to a final decision by the federal respondents on whether the lands are or are not 'to be leased' within sixty days of payment . . . ." *Id.* at *4.  Thus, the court concluded, "the Secretary has exceeded his authority, but *not* by disregarding the Reform Act's 60-day lease-issuance mandate, but by disregarding the Reform Act's 60-day decisional mandate." *Id.* at *6 (emphasis in original).  The court remanded the case to BLM, ordering the agency to "take action on the nine (9) withheld Wyoming leases and the thirty-eight (38) withheld Utah leases within thirty (30) days,"[4] since the sixty-day time period after

[4]     Of the original 118 contested leases that were pending when Energy Companies initiated this action, all but forty-seven had been issued when the district court entered its order.

-10-

payment had "long expired." *Id.* at *7. Energy Companies filed a notice of appeal.

In the meantime, BLM began complying with the district court's order on remand. The high bidders on the nine Wyoming leases, Nerd Gas Company LLC and Baseline Minerals, Inc., decided not to wait for BLM to make a decision on those parcels and instead chose to have BLM reject their bids and receive a full refund. For the remaining thirty-eight parcels in Utah, BLM offered leases with additional protective stipulations to the high bidder, Baseline Minerals, but Baseline chose not to accept the leases and BLM then rejected their bids and refunded all payments. Both Baseline Minerals and Nerd Gas filed administrative appeals with the Interior Board of Land Appeals ("IBLA") challenging the rejection of their bids, but they requested the IBLA to suspend their appeals pending the outcome of the instant appeal.

Energy Companies appeal the district court's interpretation of 30 U.S.C. § 226(b)(1)(A), arguing the court erroneously construed the plain language of the statute, which they contend requires that the Secretary issue all leases, not merely decide whether to issue them, within sixty days of payment. Highlighting § 226(b)(1)(A)'s instruction that "[l]eases *shall* be issued within 60 days following payment of the successful bidder" (emphasis added), Energy Companies cite *Forest Guardians v. Babbitt* for the proposition that "when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the

-11-

subject of the command." 174 F.3d 1178, 1187 (10th Cir. 1999) (citing *United States v. Monsanto*, 491 U.S. 600, 607 (1989)). Energy Companies claim that by enacting the Reform Act of 1987, Congress intended to limit the scope of the Secretary's discretion. By this logic, the Reform Act ends the Secretary's ability to decide not to lease a parcel once payment has been made by the winning bidder, and cases holding to the contrary that were decided before the MLA was amended by the Reform Act are inapposite.

The Federal Defendants and Conservation Groups ask us to uphold the district court's conclusion that § 226(b)(1)(A) imposes a sixty-day timeframe from when payment is made by the high bidder within which the Secretary must decide whether the parcel is "to be leased." Federal Defendants rely, in part, on the broad discretion granted to the Secretary in § 226(a), which establishes that "[a]ll lands subject to disposition under this chapter which are known or believed to contain oil or gas deposits *may* be leased by the Secretary." 30 U.S.C § 226(a) (emphasis added). Because the Reform Act did not alter or remove this broad grant of discretion to the Secretary, Federal Defendants argue that Congress intended to continue to grant the Secretary discretionary power rather than create a positive mandate to issue leases.

In addition to the merits issues, Conservation Groups, with the support of Federal Defendants, filed a motion to dismiss Energy Companies' appeal for lack of jurisdiction. First, they argue that we have no jurisdiction over the majority of

-12-

the claims because they are moot. They highlight that of the 118 leases that were pending when the lawsuit was first brought by Energy Companies, seventy-one have now been issued to the high bidders. As a result, they contend, the failure of BLM to act, which was the basis of this suit, has been remedied as to these seventy-one claims and they should be dismissed as moot. Second, they assert that the administrative-remand rule bars jurisdiction over Energy Companies' appeal regarding the remaining forty-seven leases that were not issued to the high bidders.

### III.

### JURISDICTION

"[J]urisdiction is a threshold question which an appellate court must resolve before addressing the merits of the matter before it." *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1201 (10th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). Our jurisdiction is grounded in statute. *Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563, 565 (10th Cir. 1979). Absent a specific statutory grant of jurisdiction over a particular type of dispute, we exercise jurisdiction over final decisions of the federal district courts pursuant to 28 U.S.C. § 1291. *Bender v. Clark*, 744 F.2d 1424, 1426 (10th Cir. 1984). A final decision is one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437

U.S. 463, 467 (1978) (internal quotation marks omitted). "The purpose of the finality requirement is to avoid piecemeal review." *Bender*, 744 F.2d at 1426.

### *Administrative Remand Rule*

It is well settled law that "[t]he remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision." *Bender*, 744 F.2d at 1426-27; *accord Southern Utah Wilderness Alliance (SUWA) v. Kempthorne*, 525 F.3d 966, 970 (10th Cir. 2008); *Trout Unlimited v. U.S. Dept. of Agric.,* 441 F.3d 1214, 1218 (10th Cir. 2006); *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008) ("It is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291."). This general principle has been called the "administrative-remand rule." *Trout Unlimited*, 441 F.3d at 1218 (internal citation omitted).

Energy Companies contend the administrative-remand rule is not implicated in the instant matter, relying heavily on *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683 (10th Cir. 2009). We conclude, however, that *Richardson* is distinguishable and the administrative-remand rule does apply here.

In *Richardson*, the State of New Mexico and a coalition of environmental groups challenged, on several different bases, the procedures used by BLM in opening a publicly-owned desert area to oil and gas development. The district court rejected most of the plaintiffs' claims, but held that BLM had violated

NEPA by failing to do a site-specific environmental analysis. *Id.* at 695. The district court ordered BLM to analyze the likely environmental impacts of leasing if it decided to move forward with its plan to lease the area. *Id.* Both the plaintiffs and the oil and gas company intervenors appealed, and BLM argued that under the administrative-remand rule we lacked jurisdiction to hear the appeals. *Id.* at 696.

We held we had jurisdiction because the district court's order was not a "remand" in the typical sense and was instead a "final decision" under 28 U.S.C. § 1291, thereby rendering the administrative-remand rule inapplicable. 565 F.3d at 699. In determining whether the district court's order was a final decision, we considered "the nature of the agency action as well as the nature of the district court's order." *Id.* at 697 (citing 15B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3914.32, at 237 (2d ed. 1992) (hereinafter Wright & Miller)).

Regarding the agency action, we noted that "[t]ypically, a 'remand' from a district court to an agency occurs when an agency has acted in an adjudicative capacity[,]" *id.*, but the BLM in *Richardson* had been acting in a "quasi-legislative" capacity in developing a Resource Management Plan. *Id.* at 698. We explained that "[j]udicial review of administrative action comes in many forms. The administrative action may be essentially adjudicatory, essentially legislative, or some nonadversarial action such as grant of a license. The issue of finality is

affected by the nature of the administrative proceeding . . . ." *Id.* at 697-98 (quoting 15B Wright & Miller § 3914.32, at 237). "[O]ur precedent indicates that we view the remand rule as most appropriate in adjudicative contexts." *Id.* at 698.

We also highlighted that the district court's order in *Richardson* was different from a typical "remand" because "BLM appeared in the district court as a traditional adversarial party, defending its own actions against challenges by the State [and the intervenors], rather than defending a ruling made by the Agency in a controversy between parties appearing before it." *Id.* at 698. The nature of the court's order further differed from a typical "remand" because it "did not require BLM to recommence a proceeding, or indeed to take any action at all–it simply enjoined BLM from further NEPA violations." *Id.* at 698. We explained that the court's order had "all the requisite components of a final order: It resolved all issues and granted the plaintiffs relief, enjoining issuance of the . . . lease until such analysis is complete." *Id.* at 697. As further support for concluding that the order was appealable under § 1291, we noted that this court has "often treated district court orders requiring further agency action under NEPA as final and reviewable." *Id.*

The facts of the instant matter differ markedly from *Richardson* in several important respects. We recognized in *Richardson* that in contrast to the quasi-legislative action of preparing an RMP, agency permitting "falls closer to the

traditional concept of adjudication . . . because it settles the rights of specific parties." *Id.* at 699 n.17. The agency action in question here, making a determination on a particular entity's lease application, similarly "settles the rights of specific parties" in a manner that the agency action in *Richardson* did not. Accordingly, the remand here falls much closer to the realm of a "typical remand" than the challenged action in *Richardson*. *See* 1 Richard J. Pierce, Administrative Law Treatise, § 6.1, at 403 (5th ed. 2010) ("What distinguishes legislation from adjudication is that the former affects the rights of individuals in the abstract and must be applied in a further proceeding before the legal position of any particular individual will be definitively touched by it; while adjudication operates concretely upon individuals in their individual capacity.") (internal quotation marks omitted).

In addition, we stressed in *Richardson* that the district court's decision was not a remand in the ordinary sense because it did not require that the agency take any further action. In contrast, here the district court ordered BLM to "take action on the nine withheld Wyoming leases and the thirty-eight withheld Utah leases within thirty (30) days." *Western Energy Alliance*, 2011 WL 3737520 at *7. This order clearly constitutes a remand to the agency for further action, which in and of itself makes a strong case for why the reasoning of *Richardson* is inapplicable here.

Energy Companies attempt to distinguish this appeal from cases in which

we have applied the administrative-remand rule by stressing that they are challenging BLM's *inaction*, rather than challenging a particular adjudication or leasing decision of the agency. While it is true that our other decisions applying the administrative-remand rule involved challenged agency action as opposed to the challenged inaction here, Energy Companies do not offer any persuasive reason or cite any cases to explain why this distinction should control whether the district court's order is considered final under § 1291. The fact remains that issuing specific leases falls into the category of "quasi-adjudicative" agency action and the district court remanded the matter to BLM to make decisions on the withheld lease applications within thirty days of the order. In sum, this case falls under the administrative-remand rule.

### *Exceptions to the Administrative-Remand Rule*

We have recognized that "the administrative-remand rule is not without exception." *Trout Unlimited*, 411 F.3d at 1218 (internal quotation marks omitted); *see also Bender*, 744 F.2d at 1427 (stating administrative-remand rule "is not to be applied if it would violate basic judicial principles"); 15B Wright, & Miller §3914.32, at 237-44 (2d ed. 1992) (discussing exceptions to general rule that remand to an agency is not appealable as a final decision). The "collateral order" doctrine is one of those exceptions. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). "To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order

(1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Gray v. Baker*, 399 F.3d 1241, 1245 (10th Cir. 2005).

The district court's order in this case does not satisfy the requirements of this doctrine. First, the court's decision regarding the interpretation of 30 U.S.C. § 226(b)(1)(A) did not decide an issue "completely separate from the merits of the case," it decided the issue at the very center of the merits of the case. Second, the district court's decision is not unreviewable, as evidenced by the pending appeal by Nerd Gas and Baseline Minerals before the IBLA. Thus, the collateral order doctrine does not provide Energy Companies a path around the administrative-remand rule.

Courts have also applied a "practical finality" rule that is more flexible than the collateral order doctrine in terms of what can constitute a final order under 28 U.S.C. § 1291. As the Supreme Court said, "our cases long have recognized that whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and [] it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical

-19-

construction.'" *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964) (quoting *Cohen*, 337 U.S. at 546). Although the practical finality rule "borrows some concepts from the collateral order doctrine," it is broader in application. *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1158 n.3 (10th Cir. 2007); *see also Miami Tribe of Okla. v. United States*, 656 F.3d 1129, 1139 n.13 (10th Cir. 2011) (same). But as we have warned, this exception to the administrative-remand rule "must be narrowly construed and 'pragmatic finality' invoked only in truly 'unique instances' if we are to preserve the vitality of § 1291." *Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir. 1993).

We stated in *Bender* that "the need for the practical application of § 1291 [is strongest] in situations where it is clearly urgent that an important issue–one that is serious and unsettled, and not within the trial court's discretion–be decided." 744 F.2d at 1427 (internal citation omitted). Thus, we employ a two-pronged test for applying the practical finality rule: the issue must be "important" and it must be "urgent." *See, e.g.*, *Trout Unlimited*, 441 F.3d at 1218 ("In the context of a district court order remanding a matter to an administrative agency, jurisdiction may be appropriate when the issue presented is both urgent and important."). If the test is met, we then follow "a balancing approach . . . to make this jurisdictional decision [under § 1291]." *Bender*, 744 F.2d. at 1427. "The critical inquiry" in determining whether a district court order can be considered final under this balancing test "is whether the danger of injustice by delaying

appellate review outweighs the inconvenience and costs of piecemeal review." *Id*.

Notably, "[w]hen we have heard interlocutory appeals under the practical finality rule, central to our analysis was a concern *the agency* likely would be foreclosed from future appellate review." *Miami Tribe*, 656 F.3d at 1140 (emphasis added). Indeed, we have reiterated many times that "we review orders to remand a matter to an administrative agency when it is necessary to ensure that we can review important legal questions which a remand may make effectively unreviewable, because administrative agencies may be barred from seeking district court (and thus circuit court) review of their own administrative decisions." *Graham*, 501 F.3d at 1158 (internal quotation marks omitted); *see also Bender*, 744 F.2d at 1428 (same).

The logical corollary of this principle is that we rarely take "jurisdiction over appeals involving *private* litigants seeking immediate appeal of remand orders because the issues presented would be reviewable upon conclusion of the remand proceedings." *Miami Tribe*, 656 F.3d at 1140 n.14 (emphasis added); *see also Trout Unlimited*, 441 F.3d at 1219 ("In *Bender*, this court applied the exception to the administrative-remand rule when we determined the case involved a 'serious and unsettled' question regarding federal oil and gas leasing *and* was urgent because refusal to assert jurisdiction might have foreclosed future appellate review of the issue at later stages in the proceeding.") (emphasis in original); *accord Boughton*, 10 F.3d at 752 ("In *Bender*, this court relied heavily

-21-

on our belief that a refusal to take jurisdiction would have foreclosed future appellate scrutiny of the unsettled issue."); *Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (explaining the "asymmetry" of allowing appeals of remand orders when brought by the agency but not appeals by private litigants "may seem strange, but it flows from an evenhanded application of the requirement that the error asserted not be remediable on appeal from a final judgment"); *Cf. Cotton Petroleum Corp. v. U.S. Dep't of Interior, Bureau of Indian Affairs*, 870 F.2d 1515, 1522 (10th Cir. 1989) (allowing jurisdiction over private party's appeal of remand order in "unique instance . . . [where] the danger of injustice of delaying appellate review outweighs the inconvenience and costs of piecemeal review") (quoting *Bender*, 744 F.2d at 1427)).

Viewed in this light, the district court's order appealed here does not meet the urgency prong of the practical finality exception to the administrative-remand rule. There is no risk that the Energy Companies will be foreclosed from making the arguments that they present in this appeal after the administrative process is complete. *See SUWA*, 525 F.3d at 970 (holding issue not urgent when potential intervenors can re-raise legal claims if BLM rules against them on remand); *accord Trout Unlimited*, 441 F.3d at 1219 (concluding issue not urgent where Defendants–Intervenors could seek administrative and judicial review if dissatisfied with Forest Service's decision on remand).

The Energy Companies claim that it is possible the Secretary could be

prevented from securing appellate review of the district court's order at issue here. They present three scenarios in which they assert the Secretary would not be able to seek review of the district court's order: (1) Nerd Gas or Baseline Minerals could settle their IBLA appeal with BLM; (2) the IBLA could resolve one of the pending administrative appeals on grounds unrelated to § 226(b)(1)(A); or (3) the IBLA could accept Energy Companies' argument and hold that the BLM has no authority to decline lease issuance under § 226(b)(1)(A). Aplt. Resp. Opposing Intervenors-Aple. Motion to Dismiss at 17. These scenarios are far too conjectural to serve as a basis for jurisdiction under the practical finality rule. *Cf. Bender*, 744 F.2d at 1428 (declining to consider "'possibilities' [] too conjectural to avoid reaching a just result" in practical finality analysis) (internal quotation marks omitted). Furthermore, this line of argument turns the urgency prong of this analysis on its head because the Secretary has *not* appealed the district court's order—if he had, our analysis would be decidedly different under our precedent cited above.

Energy Companies also argue that postponed review will lead to uncertainty, further litigation, and increased costs during the remand process. But this is true with respect to most non-final decisions a district court makes and does "not create appellate jurisdiction where it does not otherwise exist." *Trout Unlimited*, 441 F.3d at 1219 n.2. In this instance, as is often the case, "immediate appeal [of a non-final district court decision] would avoid the risk that

-23-

proceedings held after a challenged ruling but before appeal would have to be repeated following appeal and reversal;" however, for good reason "the final judgment rule strikes a presumptive balance in favor of deferring review." 15A Wright & Miller § 3907, at 272. "Although well-established rules of appealability might at times cause an action to be determined unjustly, slowly, and expensively, they have nonetheless the great virtue of forestalling the delay, harassment, expense, and duplication that could result from multiple or ill-timed appeals." *Boughton*, 10 F.3d at 752 (quoting 15A Wright & Miller §3913, at 462); *see also Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984) (en banc) ("This finality rule is designed to avoid piecemeal trial and appellate litigation and the delays and costs of multiple appeals upon both parties and courts, as well as to provide a clear test so that needless precautionary appeals need not be taken lest substantive rights be lost.").

We hold, as we have held in other cases in which appellants will have later opportunities to raise their arguments on appeal, that "delaying review of the district court's judgment here will not result in substantial injustice to Movants." *SUWA*, 525 F.3d at 970. Because this appeal is not urgent within the meaning of the practical finality exception to the administrative remand rule, the rule applies and we lack jurisdiction over this appeal.[5]

---

[5] Because we hold that we lack jurisdiction to review the challenged district court order at this stage of the proceedings, we do not reach the merits of Energy Companies argument that 30 U.S.C. § 226(b)(1)(A) compels the Secretary of

The appeal is DISMISSED for lack of jurisdiction.

---

Interior to issue oil and gas leases to high bidders within sixty days of payment.