FILED
United States Court of Appeals
Tenth Circuit

June 26, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

WESTERN WATERSHEDS PROJECT;
ROCKY MOUNTAIN WILD;
WILDEARTH GUARDIANS,

    Plaintiffs - Appellants,

v.

BROOKE L. ROLLINS, Secretary of the
U.S. Department of Agriculture; UNITED
STATES FOREST SERVICE,

    Defendants - Appellees,

and

STATE OF WYOMING,

    Intervenor Defendant - Appellee.

No. 25-8026

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 1:22-CV-00214-SWS)**
_____

Megan Backsen, Western Watersheds Project, Reno, Nevada, for Plaintiffs–Appellants.

Amy E. Collier, United States Department of Justice, Environment and Natural Resources Division, Washington, DC, (Adam R.F. Gustafson, Acting Assistant Attorney General, and Robert N. Stander, Deputy Assistant Attorney General, with her on the brief) for Defendants–Appellees.

Shannon Leininger, Assistant Attorney General, Wyoming Attorney General's Office, Cheyenne, Wyoming for the Intervenor Defendant–Appellee.

_____

Before **HARTZ**, **MATHESON**, and **ROSSMAN**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

Western Watersheds Project, Rocky Mountain Wild, and WildEarth Guardians (the "Conservation Groups") challenged, under the Administrative Procedure Act ("APA"), the United States Forest Service ("USFS") Thunder Basin National Grassland 2020 Management Plan Amendment (the "2020 Plan Amendment").  The district court concluded the 2020 Plan Amendment complied with both the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA")

On appeal, this court determined the 2020 Plan Amendment failed to comply with NEPA.  *Western Watersheds Project v. Vilsack*, No. 23-8081, 2024 WL 4589758, at *15 (10th Cir. Oct. 28, 2024) (unpublished) (*Western Watersheds I*).  We remanded to the district court "for consideration of the appropriate remedy." *Id.* It concluded the proper remedy is remand to the USFS <u>without vacatur</u> of the 2020 Plan Amendment.

The Conservation Groups now seek to challenge the district court's refusal to order vacatur of the 2020 Plan Amendment as part of the remand.  Because they have failed to establish that we have jurisdiction to review that determination, we dismiss this matter.

2

# I.  BACKGROUND

## A. *Initial District Court Proceedings*

"In 2021, the Conservation Groups filed suit under the APA against the USFS in the United States District Court for the District of Columbia, seeking a declaratory judgment that the 2020 Plan Amendment" was unlawful under NEPA and the ESA "and an injunction setting it aside." *Id.* at *4.

"The State of Wyoming intervened and then successfully moved for the action to be transferred to the District of Wyoming." *Id.* at *5. "Next, the USFS produced the agency record, and the parties briefed the merits of whether to set aside the 2020 Plan Amendment under the APA." *Id.* "The Wyoming district court ultimately declined to set aside the 2020 Plan Amendment, agreeing with the USFS and the State of Wyoming that" the 2020 Plan Amendment did not violate NEPA or the ESA. *Id.* "The Conservation Groups timely appealed the final judgment upholding the 2020 Plan Amendment." *Id.*

## B. *Initial Appeal*

The Conservation Groups argued on appeal that "the USFS had provided an impermissibly narrow and unreasonable Purpose and Need statement" for the 2020 Plan Amendment, "failed to analyze a reasonable range of alternatives, and failed to take a hard look at the effects of the 2020 Plan Amendment." *Id.* We agreed with these arguments. *Id.* As a result, we did not reach the Conservation Groups' ESA claim.

3

In discussing "the appropriate remedy," we noted that "[t]he Conservation Groups briefly argue[d] that the USFS's violation of NEPA warrant[ed] vacatur." *Id.* at \*15. We said that "[t]his court has adopted a two-prong, fact-sensitive test for determining whether vacatur is the appropriate remedy for an APA violation: (1) the seriousness of the agency action's deficiencies (and thus the extent of doubt whether the agency chose correctly), and (2) the disruptive consequences of an interim change that may itself be changed." *Id.* (alterations and quotations omitted). The test comes from *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). We noted "that application of the *Allied-Signal* factors requires a fact-intensive inquiry that is typically left to the discretion of the district court." *Western Watersheds I,* 2024 WL 4589758, at \*15 (alterations and quotations omitted).

We decided that "[b]ecause the *Allied-Signal* factors were not considered by the district court, and because the parties d[id] not provide any discussion of the factors on appeal," the proper course was to "remand to the district court with instructions to apply these factors in the first instance to determine the appropriate remedy." *Id.* In other words, we remanded for the district court to determine whether remand to USFS should be with or without vacatur.

### C. *District Court Proceedings on Remand*

On remand in the district court, the parties filed additional briefs discussing "the question of remedy," particularly whether vacatur was appropriate. App., Vol. 1

4

at 101.  No party questioned the need for a remand to the agency.  The Conservation Groups argued that vacatur was the presumptive and appropriate remedy under the APA, and that the *Allied-Signal* test supported vacatur because the agency's violations were serious and because vacating the 2020 Amendment would not be disruptive.  The USFS and Wyoming argued that the *Allied-Signal* factors supported remanding the 2020 Plan Amendment to the agency without vacatur.

The district court ordered remand to the USFS without vacatur of the 2020 Plan Amendment, concluding that both *Allied-Signal* factors favored remand without vacatur.  It did not enter a final judgment.

The Conservation Groups seek to appeal from the remand order.

### D.  *This Appeal*

Shortly after the Conservation Groups filed their notice of appeal, the clerk of this court issued an order directing the parties to address in their briefs whether this court has jurisdiction to review the district court's order.  They have done so.

### II.  DISCUSSION

"We review questions of our appellate jurisdiction de novo."  *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1091 (10th Cir. 2017).  The appellant "bears the burden of establishing appellate jurisdiction."  *SeedX, Inc. v. Lincoln Strategy Grp. LLC*, 158 F.4th 1166, 1171 (10th Cir. 2025); *see Mohamed v. Jones*, 100 F.4th 1214, 1224 (10th Cir. 2024) (same).

5

### A. *Legal Background*

**1. Finality under 28 U.S.C. § 1291**

"Section 1291 of the Judicial Code confers on federal courts of appeals jurisdiction to review 'final decisions of the district courts.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting 28 U.S.C. § 1291). A decision is "final" under § 1291 when it "resolves the entire case"—it "ends the litigation" and "leaves nothing for the court to do but execute the judgment." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37-38 (2020) (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015)). "'[F]inal decisions' typically are ones that trigger the entry of judgment." *Mohawk,* 558 U.S. at 523. In short, "[t]o be final, a decision must reflect the termination of all matters as to all parties and causes of action." *SeedX,* 158 F.4th at 1171 (quotations omitted).

**2. Administrative Remand Rule**

"The remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision" under § 1291. *Rocky Mtn. Wild v. Dallas*, 98 F.4th 1263, 1283 (10th Cir. 2024) (quoting *Bender v. Clark*, 744 F.2d 1424, 1426-27 (10th Cir. 1984)). "The general principle that appellate courts do not address issues pending before an agency is called the administrative remand rule." *Id.* "The administrative-remand rule is but one offshoot of the more general and much older final-judgment rule—i.e., the rule that only final decisions of the district courts are final and therefore appealable."

6

Matthew J. Sanders, *Rethinking the Administrative-Remand Rule*, 78 Stan. L. Rev. __ (forthcoming 2026) (manuscript at 11) (currently available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5167497).

In determining whether a district court order should be "considered final and appealable" under the administrative remand rule and § 1291, we "[l]ook[] to the characteristics that influence finality, including the nature of the agency proceeding and the character of the dispositive district court order." *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 697-98 (10th Cir. 2009). "[W]e consider whether [the agency proceeding] was essentially adjudicatory, essentially legislative, or some nonadversarial action such as grant of a license." *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1157 (10th Cir. 2019) (quotations omitted). And "we consider [the district court order's] character, including whether it returns an action to . . . the agency for further proceedings." *Id.* (quotations omitted).

If "the district court's order is subject to the administrative remand rule" and thus is not final under § 1291, "the next step is to determine whether an exception to the rule applies." *Rocky Mtn. Wild*, 98 F.4th at 1284. "We have recognized three exceptions: (1) the collateral order doctrine, (2) the practical finality rule, and (3) the

pendent appellate jurisdiction doctrine." *Id.* (quoting *C.W. ex rel. B.W. v. Denver Cnty. Sch. Dist. No. 1*, 994 F.3d 1215, 1221 (10th Cir. 2021)).[1]

### 3. Practical Finality Exception

Under the practical finality exception, "we sometimes regard a district court's remand to an agency as practically final." *C.W. ex rel. B.W.*, 994 F.3d at 1221 (quoting *Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*, 968 F.3d 1156, 1164 (10th Cir. 2020) (quotations omitted)). "We first ask whether it is clearly urgent that an important issue—one that is serious and unsettled, and not within the trial court's discretion—be decided." *Id.* (quotations omitted). "If we find an important and urgent issue, we proceed to a balancing test." *Id.* (quotations omitted). "We ask whether the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Id.* (quotations omitted). "The

---

[1] The Conservation Groups invoke only the practical finality rule. *See* Aplts. Br. at 21-24. We therefore do not consider whether the collateral order or pendent appellate jurisdiction doctrines establish jurisdiction for this appeal. *See Avant v. Doke*, 104 F.4th 203, 206 (10th Cir. 2024) (holding "we need not address the collateral-order doctrine because the [appellant] hasn't invoked it."); *E.E.O.C. v. OJ Utah, LLC*, 822 F.3d 536, 542 & n.7 (10th Cir. 2016) ("As the appellant, Mr. Bonn bears the burden to establish appellate jurisdiction. . . . Because Mr. Bonn does not invoke the collateral order doctrine, we decline to address the doctrine's applicability here."); *Raley v. Hyundai Motor Co., Ltd.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n. 2 (10th Cir. 1996) (stating that arguments in support of jurisdiction may be waived like any other contention).

practical finality rule must be narrowly construed and pragmatic finality invoked only in truly unique instances if we are to preserve the vitality of 28 U.S.C. § 1291." *Id.* (alterations and quotations omitted).

### B. *Analysis*

The Conservation Groups argue "the administrative remand rule does not apply to this case, and the district court's remedies determination is a final order that this Court has jurisdiction to review pursuant to 28 U.S.C. § 1291." Aplts. Br. at 21. They also argue that if we conclude "the administrative remand rule does apply," we "should alternatively exercise jurisdiction pursuant to the practical finality exception to that rule." *Id.* at 21-22. The Conservation Groups fall short of establishing appellate jurisdiction on either ground.

### 1. Administrative Remand Rule

As we have long noted, "remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision." *Trout Unlimited v. U.S. Dep't of Agric.*, 441 F.3d 1214, 1219 (10th Cir. 2006) (quotations omitted).

In *Western Watersheds I*, this court remanded to the district court "to apply [the *Allied-Signal*] factors in the first instance to determine the appropriate remedy." 2024 WL 4589758, at *15. The district court ordered "that this matter is hereby **REMANDED** to the United States Forest Service, without vacatur, to address the

9

NEPA deficiencies in the 2020 Plan Amendment consistent with the Tenth Circuit's Order and Judgment." App., Vol. 1 at 227.

The parties contest only whether the remand to the USFS should be with or without vacatur of the 2020 Plan Amendment. They have not pointed to a case applying the administrative remand rule to this exact, uncommon circumstance. The jurisdictional question is whether the district court order was a final judgment under § 1291. We must consider both the nature of the agency action and the district court's order. *See N.M. Health Connections*, 946 F.3d at 1157 ("[T]his court considers the nature of the agency action as well as the nature of the district court's order" (quotations omitted)). We conclude the order was not final and that we lack appellate jurisdiction.

### a. Agency action

The agency action was the USFS's Record of Decision in 2020 adopting an amendment to its management plan for the Thunder Basin National Grassland. *Western Watersheds I*, 2024 WL 4589758, at *3-4. This action was not adjudicatory because the USFS did not "ma[k]e a determination on an application . . . and settle[] the rights of a specific party." *Rocky Mtn. Wild*, 98 F.4th at 1283. Nor was the action nonadversarial in nature, "such as grant of a license." *N.M. Health Connections*, 946 F.3d at 1157.

Instead, in adopting the 2020 Plan Amendment, the USFS interpreted and applied federal statutes "to determine its obligations thereunder, and then took

concrete action consistent with its interpretation." *Am. Wild Horse Pres. Campaign v. Jewell*, 847 F.3d 1174, 1184 (10th Cir. 2016). "In turn," the USFS "has appeared in this action as a traditional adversarial party, defending its own actions against challenges by [the Conservation Groups], rather than defending a ruling made by [it] in a controversy before parties appearing before it." *Id.* (quotations omitted). The agency action thus may be characterized as adversarial and quasi-legislative. *See N.M. ex rel. Richardson*, 565 F.3d at 688, 698 (characterizing as quasi-legislative the Bureau of Land Management's decision, as part of amending its resource management planning process, to open a grassland for federal fluid minerals development).

Although we have said that "the remand rule [is] most appropriate in adjudicative contexts," *id.* at 698, it may apply to legislative or quasi-legislative agency action, *see Am. Wild Horse*, 847 F.3d at 1184 (noting "that we review the remand rule as *most* appropriate in adjudicative contexts" (emphasis added) (quotations omitted)). We thus turn to the nature of the district court order as the decisive consideration.

### b. District court order

Our decision in *Western Watersheds I* influenced the nature of the district court's order. We concluded there "that the USFS issued an unduly narrow Purpose and Need Statement, failed to consider a reasonable range of alternatives, and failed to take the required 'hard look' under NEPA at environmental consequences of the

2020 Plan Amendment before adopting it." 2024 WL 4589758, at *1. After "determin[ing] that the 2020 Plan Amendment [wa]s unlawful," we turned to "the appropriate remedy." *Id.* at *15. Because the district court had not considered the *Allied-Signal* factors, "and because the parties d[id] not provide any discussion of th[os]e factors on appeal," we "remand[ed] to the district court with instructions to apply th[o]se factors in the first instance to determine the appropriate remedy." *Id.*

On remand, the district court considered the *Allied-Signal* factors and concluded that remand to the USFS "without vacatur" was "the appropriate remedy in this case." App., Vol. 1 at 221. Consistent with *Western Watersheds I*, the court's remand order anticipates, and indeed requires, the USFS to correct the NEPA deficiencies we identified. Specifically, the district court instructed the USFS "to address the NEPA deficiencies in the 2020 Plan Amendment consistent with the Tenth Circuit's Order and Judgment." *Id.* at 227.

At a minimum, under the district court order the USFS will have to revise its Purpose and Need statement, *Western Watersheds I*, 2024 WL 4589758, at *8, consider a reasonable range of alternatives that fall within the scope of the revised Purpose and Need statement, *id.* at *8-10, and "take a hard look at the issue of the combined impact of decreased acreage objectives, density control, recreational shooting, poison, and plague on prairie dog populations," *id.* at *15. Thus, unlike some of our prior administrative remand rule cases, the USFS cannot simply "invoke

12

the same analysis" on remand, *Am. Wild Horse*, 847 F.3d at 1185, nor does it have

"the option of ceasing [the] proceedings," *N.M. ex rel. Richardson*, 565 F.3d at 698.

Because the district court's order returned the matter to the USFS with explicit

instructions to take additional action consistent with *Western Watersheds I*, it

"mark[ed] a continuation" rather than the conclusion "of the case." *Caesar v. West*,

195 F.3d 1373, 1374 (Fed. Cir. 1999).

*    *    *    *

Although the quasi-legislative nature of the agency action may weigh against

application of the administrative remand rule, s*ee N.M. ex rel. Richardson*, 565 F.3d

at 698 (declining to apply administrative remand rule, in part, because the agency

action at issue involved a "policymaking process based on the exercise of BLM

expertise" that was "quasi-legislative"), we conclude that the character of the district

court's order is the key factor and that the order was "an administrative remand." *Id.*

at 699.  It was not a final order under § 1291.[2]

---

[2] The Conservation Groups argue this case is "nearly identical to the actions in [*N.M. ex rel.*] *Richardson* and *American Wild Horse*," Aplt. Br. at 20, where we declined to apply the administrative remand rule.  We disagree.

Unlike this case, in *N.M. ex rel. Richardson*, the district court, not this court, first identified NEPA deficiencies in the agency's action.  565 F.3d at 695.  We concluded that "*[b]oth* the nature of BLM's proceeding and the character of the decision below indicate[d] that viewing that decision as a 'remand' would strain common sense." *Id.* at 699.  We noted in particular that the district court's remand "order did not require [the agency] to recommence a proceeding, or indeed to take any action at all—it simply enjoined [the agency] from further NEPA violations." *Id.* at 698.  We thus characterized "the nature of the [district] court's" order as an "injunction" and concluded it "[wa]s wholly unlike a traditional remand." *Id.*  By contrast, the district court's order here is like

## 2. Practical Finality Exception

The Conservation Groups urge us to "alternatively exercise jurisdiction pursuant to the practical finality exception" to the administrative remand rule. Aplts. Br. at 22. But they overlook a key requirement. "[W]e employ a two-pronged test for applying the practical finality rule: the issue must be 'important' and it must be 'urgent.'" *W. Energy All. v. Salazar*, 709 F.3d 1040, 1049-50 (10th Cir. 2013) (quoting *Trout Unlimited*, 441 F.3d at 1218). To qualify as "important, an issue must be "serious and unsettled, and not within the trial court's discretion." *C.W. ex rel. B.W.*, 994 F.3d at 1221 (quoting *W. Energy All.*, 709 F.3d at 1049); *see Bender*, 744 F.2d at 1427 (same).

As previously noted, the parties agree this matter must be remanded to the USFS. The only issue is whether the remand should be with or without vacatur, and

---

a traditional remand because it requires the USFS to take remedial action in response to the NEPA deficiencies identified in *Western Watersheds I*.

In *American Wild Horse*, we concluded that both the nature of the agency proceeding and of the district court's order weighed against application of the administrative remand rule. 847 F.3d at 1184-85. We noted that "the district court's [remand] order had no impact whatsoever on the gather [of wild horses and burros] at issue in th[e] case" and "no impact on [the agency's] ability to invoke the same analysis of the [federal statute at issue] and proceed with future gathers." *Id.* at 1185. Again, by contrast, the district court's order here and the remedial action it requires will affect the USFS's future land management decisions. In light of the NEPA deficiencies we identified in *Western Watersheds I*, the USFS cannot simply invoke the same analysis it applied in adopting the 2020 Plan Amendment.

Finally, the issue of whether to remand with or without vacatur was absent in *N.M. ex rel. Richardson* and *American Wild Horse*. In sum, unlike both *N.M. ex rel. Richardson* and *American Wild Horse*, the nature of the district court's order in this case weighs more heavily in favor of applying the administrative remand rule.

14

that issue falls within the district court's discretion. *See Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1049 (10th Cir. 2023) ("Application of the *Allied-Signal* factors requires a fact-intensive inquiry that is typically left to the discretion of the district court."); *Cigar Assoc. of Am. v. FDA*, 132 F.4th 535, 542 (D.C. Cir. 2025) (reviewing for abuse of discretion a district court's application of the *Allied-Signal* factors in deciding whether to vacate an FDA rule); *Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) ("We review the district court's decision to vacate ... for abuse of discretion."). Thus, the practical finality exception does not apply.

### III.  CONCLUSION

The Conservation Groups seek to appeal the district court's order remanding this matter to the USFS without vacatur. They challenge only the without-vacatur part of the order, not the remand itself. For appellate jurisdiction, they argue the order was not an administrative remand or, if it was, the practical finality exception to the administrative remand rule applies.

The administrative remand rule provides that a district court's order remanding a matter to an agency for further proceedings is not a final order under § 1291. Under the practical finality exception, we have jurisdiction to review a remand order when an issue is urgent and important and not within the district court's discretion.

15

Here, the district court order remanded the 2020 Plan Amendment to the USFS without vacatur for correction of deficiencies.   Given the order's nature, it was an administrative remand and not a final order.

The practical finality exception does not apply because the issue of whether remand would be with or without vacatur was within the court's discretion.

We conclude the Conservation Groups have failed to meet their "burden of establishing appellate jurisdiction." *SeedX,* 158 F.4th at 1171.  We therefore dismiss this appeal for lack of jurisdiction.[3]

---

[3] A leading treatise suggests the Conservation Groups may have attempted to establish jurisdiction (1) by challenging the order under 28 U.S.C. § 1291(a)(1) as granting or modifying an injunction, (2) seeking review by certification under 28 U.S.C. § 1292(b), or (3) invoking the collateral order doctrine.  *See* 15B Wright & Miller's Federal Practice & Procedure § 3914.32 (3d ed. 2026).  The Conservation Groups did not pursue any of these possibilities, and we express no opinion on whether any would be viable.

25-8026, *W. Watershed Project v. U.S. Forest Serv.*

**HARTZ**, J., concurring

I join in full the opinion of Judge Matheson. I write separately only to emphasize the importance of our cabining the exception to the final-judgment rule recognized in this circuit's decisions in *New Mexico ex rel. Richardson v. Bureau of Land Management*, 565 F.3d 683 (10th Cir. 2009), and *American Wild Horse Preservation Campaign v. Jewell*, 847 F.3d 1174 (10th Cir. 2016). It appears that no other circuit has followed our lead in recognizing the exception. And the Supreme Court has been emphatic that the courts should leave to Congress and the rule-making process the creation of any further exceptions to the final-judgment rule. *See Mohawk Ind., Inc. v. Carpenter*, 558 U.S. 100 (2009).